[S. F. No. 12726. In Bank.—May 28, 1928.]

CITY OF PASADENA (a Municipal Corporation), Petitioner, v. R. C. McALLASTER, City Attorney, etc., Respondent.

O'Melveny, Millikin & Tuller, O'Melveny, Tuller & Myers, James L. Beebe and Pierce Works, for Petitioner.

R. C. McAllaster for Respondent.

Everett W. Mattoon, Gordon Boller and H. Woodworth Kennedy, *Amici Curiae.*

SHENK, J.—This is an original application for a writ of mandate to compel the respondent, as city attorney of the City of Pasadena, to institute condemnation proceedings pursuant to an order of April 28, 1927, of the board of directors of the petitioner, City of Pasadena, for the acquisition of property necessary to widen, improve, and extend Holly Street between Marengo Avenue and Grand Avenue and to widen Grand Avenue between Holly Street and Colorado Street in said city.

As a return to the alternative writ the respondent filed a general demurrer to the petition and also an answer setting forth certain facts which are admitted by the petitioner to be true. The matter is therefore submitted on the undisputed averments of fact set forth in the petition and in the

answer. From these averments it appears that on March 15, 1927, pursuant to the provisions of the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849), the board of directors of the City of Pasadena duly adopted a resolution of intention to order the acquisition of land necessary for the improvement mentioned. It also appears that all of the steps required by the act were duly and regularly taken. It is unnecessary to recite them in detail. The order of April 28, 1927, adopted and established the boundaries of the assessment district, designated as acquisition and improvement district No. 2 of the City of Pasadena, which comprises the property to be benefited by the proposed improvement. The area to be benefited was divided into eight zones, designated as A, B, C, D, E, F, G, and H. The order also provided that the expense of the acquisition should be defrayed by the sale of bonds, to be issued in the total amount of such expense, the bonds to bear interest at the rate of five and one-half per cent per annum, payable semi-annually, and to mature serially within thirty years, approximately one twenty-fifth part of the aggregate principal to be payable annually, beginning five years after the issuance of the bonds. Payment is to be provided for "by the levy of special assessment taxes upon the lands within the assessment district according to the assessed value of said land (exclusive of improvements thereon), and in accordance with the zones and percentages" as set forth in the order. A large amount of municipally owned property is situate in this proposed assessment district and is included within zone H thereof. The percentage of the total bond issue allotted to zone H, if the proceedings are completed, is 20.68. The estimated total cost of the acquisition is $1,150,000, making the share of zone H approximately $230,000. No declaration was made in the resolution of intention to omit any of the municipally owned or controlled property from the assessment district, and it is conceded that such publicly owned property, by the terms of the Acquisition and Improvement Act, will be subject to the special assessment tax to the extent of its share of the expense of acquisition. By the provisions of the act the amount of the special assessment tax levied each year against the municipally owned land in zone H is made "an enforceable obligation against the owner of or the governing body controlling said land,

and it shall be the duty of the officer or body having charge of the disbursement of the .funds of the owner of said land to pay the amount of said special assessment tax levied from any of the funds thereof available immediately upon its becoming due.''

The charter of the City of Pasadena (subd. 15, sec. 3, art. I; sec. 12, art. XII) limits the tax rate to be levied each year for the purpose of raising sufficient revenue to carry on the various departments of the municipal government for the current fiscal year, exclusive of bonded indebtedness, etc., to one dollar for each $100 of the assessed valuation of real and personal property. By subdivision 17 of section 3 of article I of said charter the City is given power to levy taxes exceeding the limit permitted, provided the levy is first approved by two-thirds of the qualified electors of the City voting at a special election called for that purpose by the City Council, and by section 21 of article XII of the charter, if the council shall determine that the public interest requires the construction of any public improvement the cost of which, in addition to the other expenditures of the City, will exceed the income and revenue provided for in any one year, it may, by ordinance, submit a proposition to incur a debt for such purpose, and proceed therein as provided in section 18 of article XI of the constitution of the state of California. No proceedings have been had, and it is contemplated that none will be taken, in accordance with these provisions of the City Charter or of section 18 of article XI of the constitution with respect to the proposed indebtedness.

It is admitted by the pleadings that if the City incurs any liability by reason of these acquisition proceedings, the amount of the obligation will exceed the income and revenue of the City in the year in which it is incurred. Petitioner argues that this is not an indebtedness ·of the City contracted *by* the City, but is a charge on the land benefited, the obligation of the payment thereof being imposed on the City by law; that payment of the bonds is provided for exclusively out of a special fund derived from the collection of assessments within the district, and therefore not a general obligation against the City; that the levy of an assessment does not create an indebtedness at all, an assessment not being

contemplated to be an indebtedness within the meaning of the constitution.

On the other hand, the respondent insists that the assessment to pay the contemplated bond issue will create an indebtedness or liability of the City in violation of the section of the charter referred to and of section 18 of article XI of the constitution. Section 5 of article IX of the City Charter incorporates in the charter by reference the said Acquisition and Improvement Act. We therefore need be concerned only with the question of whether the issuance of the improvement bonds for the acquisition of said property and the City's obligation to provide money for the payment of the same would be in violation of the provisions of section 18 of article XI of the constitution. That section reads: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for each year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof on or before maturity. . . . Any indebtedness or liability incurred contrary to this provision, with the exceptions hereinbefore recited, shall be void."

It is conceded by the petitioner that if and when the contemplated bonds are issued they must be paid in part by the City of Pasadena presumably out of general tax money as provided in the act. It is also conceded that the total payments by the City to be made by the City of Pasadena from time to time during the life of the bonds into the bond retirement fund will be in excess of the revenue of any one year during the period from the inception of the acquisition proceeding up to the final retirement of the bonds, and this, coupled with the fact, also conceded, that no assent of the electors of the City is proposed to be obtained in connection with the matter, will result in a violation of the constitutional provision if the obligation of the City so assumed is prohibited by the constitution.

■ A survey of the authorities on the subject clearly shows that in the application of the prohibitive language of section 18 of article XI of the constitution to the situation here presented at least two conditions must concur: first, that an indebtedness or liability be incurred by the City of Pasadena in excess of the income and revenue provided for the year in which it is incurred, and, secondly, that such indebtedness be incurred voluntarily on the part of the officers of the City having an official duty to perform in the matter. If these two conditions be present the result is not that the indebtedness or liability may not be incurred at all, but that the assent thereto of two-thirds of the qualified electors of the City must be first obtained. ■ The first question, therefore, is this: Does the obligation assumed by the City under the Acquisition and Improvement Act of 1925 and the proceedings in question constitute an indebtedness or liability on the part of the City? The constitutional language is very broad. It is that no "indebtedness or liability in any manner or for any purpose," etc., shall be incurred except as in the section permitted. Sections 26 to 36, inclusive, of the act prescribe the procedure for the acquisition of property and the sale of bonds to obtain the money to pay the amount fixed by the judgment in condemnation. Section 11 provides that there shall, each year, at the time of levying taxes for general municipal purposes, be levied against and upon all the lands within the district (including, as here, the lands belonging to the municipality), according to the assessed valuation of said lands, exclusive of improvements thereon, a special assessment tax in an amount clearly sufficient, together with any moneys which are or may be in the district fund, to pay all the principal and interest which has become or may become payable on the bonds before the proceeds of another tax levy for municipal purposes may become available. That section further provides that in the event that there be included within the assessment district any land belonging to the municipality, the amount of the special assessment tax levied each year against said land shall be *an enforceable obligation* against the *governing body controlling said land,* and it is made the duty of the governing body having charge of the disbursement of the funds of the owners of said land to pay the amount of said special assessment tax so levied from any

funds available, immediately upon the assessment tax becoming due. It would be difficult to perceive a more direct obligation imposed on the City authorities to pay into the district bond fund the amount of the assessment chargeable against the City. It is conceded that the City's lands, although in form assessed for the improvement, may not legally be sold to satisfy the assessment in the manner provided for the sale of privately owned lands, or at all. The City's proportion of the acquisition cost must be paid into the district bond fund provided for by the act from the general funds of the City or from the proceeds of some general municipal tax levy. In any event the taxpayers of the City as a whole bear the burden of the obligation thus incurred.

It is pointed out on behalf of the petitioner that the bond form prescribed by the statute provides that the amount of the principal and interest on said bond is payable exclusively out of the district bond fund, and that ''neither said city, nor any officer thereof, shall be holden from its payments otherwise.'' From this provision of the bonds it is urged that the City assumes no liability thereunder and that the only obligation otherwise assumed by the City is as a property owner within the assessment district. It is obvious that the City's liability does not arise by reason of the form of the bond and that the holder of the bond may enforce payment thereof only from the district bond fund. But the liability of the City is to pay the assessment, which, when paid into the district fund, becomes available for the payment of the bonds. In the case of privately owned property there is no personal liability under the bonds on the part of the owners of the property assessed. The property itself is security to the bondholder that the assessments will be paid into the district fund. But the publicly owned property cannot be so bound. The City is obligated under the statute to provide the equivalent of the amount assessed thereon and to pay the same into the district fund. When the assessment is thus paid and is then disbursed to satisfy the bonds the money leaves the public coffers irrevocably. This situation is clearly distinguishable from that presented in *Stege* v. *City of Richmond*, 194 Cal. 305 [228 Pac. 461], wherein no municipally-owned property was involved. It is admitted by the parties that if no munici-

pally owned property be included in the assessment district no questions may arise concerning the constitutional debt limit or the charter tax limit. It seems clear, however, that when, as here, municipally owned property is included in the assessment district and the City is bound under the statute to pay from its general funds and into the special bond fund an amount toward the cost of the improvement which exceeds the constitutional debt limit, it is a mere play on words to argue that the City itself is not liable to pay the assessment because the form of the bond provides that the principal and interest thereon shall be paid only from the special fund provided for that purpose and that the City shall not be holden otherwise. Counsel for petitioner certainly would not suggest that if valid bonds be issued and sold and if default be made in the payment into the special fund of the City's share of the assessment a bondholder could not compel the City's authorities to transfer from the general funds of the City to the special fund sufficient money to satisfy the City's proportion of the assessment or to levy a tax on all the taxable property of the City to replenish adequately the special fund to the extent of the City's proportion.

It is not the liability of the city generally *on the bonds* to be issued that presents the crucial questions. The liability of the City generally to feed the fund from which the bonds are to be paid is the vital point. That liability is definite, certain, and irrevocable during the full period of outstanding bonds and for the full proportion of the City's share. In principle this situation cannot be distinguished from that wherein a City is proposing to acquire the land by purchase and is binding itself to provide the funds, either from the general funds of the City or from a levy of a tax on the property in the municipality as a whole to pay the cost of the acquisition. In the event that the bonds be sold to provide the money to satisfy the judgment, and the title to the property condemned be transferred to the City the transaction will be closed so far as the acquisition proceeding is concerned. The proceeding is therefore not one governed by the principles laid down in such cases as *McBean* v. *Fresno,* 112 Cal. 159 [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358], *Smilie* v. *Fresno County,* 112 Cal. 311 [44 Pac. 556], and *Doland* v. *Clark,* 143 Cal. 176 [76 Pac. 958]. In those cases

the right to the public funds accrued only after the performance of some future service on the part of those whose claims thereto might arise or upon the happening of some contingency which might not arise. In the present case the right to the full purchase price will accrue at once upon the finality of the judgment in condemnation, which finality necessarily would occur prior to the assessment and also prior to the sale of the bonds.

The petitioner relies upon the general rule that no obligation cast upon a municipality by operation of law can be said to be an ''indebtedness or liability'' within the meaning of section 18 of article XI of the constitution. It is argued that the petitioner's obligation to pay the assessment on its property is one imposed by law because section 41 of the act provides that when the municipally owned property is assessed the assessment tax levied thereon is an enforceable obligation against the governing body controlling the land. It is true that the statute so provides, but it does not follow therefrom that the City's liability thereunder is involuntary. The proceeding is instituted by the same governing body charged with the duty of providing the funds for the payment of the bonds. This governing body was under no compulsion to start the proceeding in the first instance. It was entirely optional with the City to proceed or not to proceed in the commencement thereof. Later it was likewise optional with said governing body to include in or exclude from the assessment the property belonging to the City. Acting voluntarily in both instances the City elected to commence the proceeding and also to include the City property in the assessment. Under these circumstances it would seem idle to argue that the obligation thus assumed is imposed by the law and therefore involuntary. In support of its contention in this respect the petitioner cites *Lewis* v. *Widber,* 99 Cal. 412 [33 Pac. 1128]; *Federal Construction Co.* v. *Wold,* 30 Cal. App. 360 [158 Pac. 340]; *City of Long Beach* v. *Lisenby,* 180 Cal. 52 [179 Pac. 198], and other cases of like import which need not be specially mentioned. The doctrine announced by these cases is of course recognized. It was held in the case of *Lewis* v. *Widber, supra,* that ''the clear intent expressed in the constitutional provision was to limit and restrict the power of the municipality as to any indebtedness or liability which it

has discretion to incur or not to incur." The payment of the salary of a public officer whose office was created and whose salary was fixed by the legislature was held not to be within the prohibition of the constitutional section. It was further stated in that case, "that this clause of the Constitution refers only to an indebtedness or liability which one of the municipal bodies mentioned has itself incurred—that is, an indebtedness which the municipality has contracted, or a liability resulting, in whole or in part, from some act or conduct of such municipality. Such is the plain meaning of the language used." In the Federal Construction Company case it was held that the obligation of the municipality to purchase all property offered at delinquent sales for the nonpayment of street assessments, in the absence of other purchasers, pursuant to the Improvement Act of 1911 [Stats. 1911, p. 730], and the Improvement Bond Act of 1915 [Stats. 1915, p. 1441], was an obligation imposed on the city by law and was not a liability prohibited by the constitutional provision. In such a case the payment out of the public treasury is for the purpose of a loan or advancement to facilitate and make effectual the proceedings under the act and which the city later may recover. The Long Beach case involved, basically, the liability of a municipality arising out of torts. In all of these cases it was very properly held that the constitutional prohibition did not apply to the situations there presented.

We are unable to distinguish in principle the case here presented from the long line of cases in which this court has enforced the restriction on municipal indebtedness or liability contained in section 18 of article XI of the constitution (see *Mahoney* v. *City and County of San Francisco,* 201 Cal. 248 [257 Pac. 49] ; *In re City and County of San Francisco,* 195 Cal. 426 [233 Pac. 965] ; *Chester* v. *Carmichael,* 187 Cal. 287 [201 Pac. 925] ; *Arthur* v. *City of Petaluma,* 175 Cal. 216 [165 Pac. 698] ; *People* v. *Hanford High School Dist.,* 148 Cal. 705 [84 Pac. 193] ; *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641; 18 Cal. Jur. 879).

The petitioner has cited and strongly relies on the case of *City of Perry* v. *Johnson,* 106 Okl. 32 [233 Pac. 679], as supporting the contention that the levy of an assessment against municipally owned property does not result in the creation of an indebtedness as contemplated by section 18

of article XI of the constitution. In the Oklahoma case the court held that the provision of the constitution of that state similar to that contained in our constitution was a "debt" limit and not a "tax" limit and did not apply to assessments for benefits occasioned by reason of public improvements levied against real estate owned by a municipal corporation. The court in that case was mainly concerned with the meaning of the word "indebtedness" in the constitution of that state. Our constitutional provision is broader in that it prohibits the incurring of any "indebtedness or liability," without the consent of the electors. But assuming the two provisions were the same, we are unable to arrive at the same conclusion. As pointed out in that case there is for some purposes a distinction between an assessment for benefits and an *ad valorem* tax, but when the City pledges its credits, i. e., the credit of the taxpayers of the City as a whole, to pay for a public improvement and, as here, the amount agreed to be paid is in excess of the income and revenue for the year in which the liability is incurred and without the assent of the electors of the City, it seems to us that a liability is incurred contrary to the provisions of section 18 of article XI of our constitution as the same has been interpreted by this court since the adoption of the section. Whether the transaction be one of purchase by firm contract in installments, or by voluntarily assuming to pay assessments levied by itself, the City is contemplating an unauthorized expenditure of public funds.

We are quick to recognize a growing and commendable tendency on the part of the legislative branch and of the subordinate governmental agencies of the state to authorize and adopt measures which will enable the taxpayers of the City at large to bear a just proportion of special assessments for benefits on account of public improvements, but we cannot lose sight of the fact that in carrying out this laudable purpose constitutional bounds must be observed. It may also be noted that if the improvements be important enough to warrant expenditure of general funds in excess of ordinary income and revenue the authorities having the matter in charge should not hesitate to submit the question of the incurring of the liability therefor to the electors for their

approval or rejection as plainly contemplated by the constitutional provision.

The respondent urges as a further reason why the relief sought herein should not be granted the fact that after the petitioner started the present acquisition proceeding the legislature amended the act. It is claimed that the effect of the amendment has deprived the City of jurisdiction to further proceed. Under the act as originally framed the first interest payment on the district bonds was made payable on the second day of the January or the July next succeeding the date of the bonds. In 1927 [Stats. 1927, p. 1375], the legislature amended the act so as to provide that the first payment of interest should be payable on the second day of the January or the July next succeeding one year after the date of the bonds. It is urged that the delayed payment of interest under the amendment might result in a lower bid for the bonds and an increased cost of the improvement. It is not made clear and we do not perceive how the amendment would increase the cost of the acquisition of the land which of necessity is not determinable by any provision of the bonds but is fixed in the condemnation proceeding. Nor does it appear that the burden of the property owners in the district would be increased by reason of the amendment. We find nothing in the amendment which may not be given effect without prejudice to any right of the petitioner or those who might be required to pay the cost of acquisition.

The peremptory writ is denied.

Langdon, J., Preston, J., Richards, J., Waste, C. J., and Curtis, J., concurred.