[Civ. No. 9867. Second Appellate District, Division Two.—September 27, 1934.]

CITY OF PASADENA (a Municipal Corporation), Petitioner, v. BESSIE CHAMBERLAIN, as City Clerk, etc., Respondent.

Harold P. Huls, City Attorney, and John W. Holmes, Deputy City Attorney, for Petitioner.

Cruickshank, Brooke & Evans for Respondent.

Orrick, Palmer & Dahlquist, as *Amici Curiae* on Behalf of Respondent.

SCOTT, J., *pro tem.*—Petitioner seeks a writ of mandate to compel respondent, its city clerk, to proceed with the holding of an election on November 6, 1934, for the purpose of submitting to its electors two alternative bond issues. No conflict appears as to the facts. Within the city limits of Pasadena there is an area known as Carmelita Gardens, suitable for use as a public park. It consists of parcel "A", nine and one-half acres, and parcel "B", two and three-quarters acres. These proceedings concern parcel "B", which petitioner desires for park purposes. To acquire it the board of directors of petitioner adopted an ordinance calling an election for November 6, 1934, and submitting two propositions: Number "1", which calls for voting of $215,000 of bonds, and number "2", which calls for $185,000 of bonds. Said ordinance requires respondent, as city clerk, to make appropriate arrangements for the holding of such election as provided by the city charter. Upon her refusal to proceed, assigning legal reasons therefor, petitioner has sought this writ.

On April 26, 1929, parcel "B" was sold to petitioner for nonpayment of taxes. It was and is part of an assessment district created under the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849, sometimes called the Mattoon Act) to improve Colorado Street. Bonds of that improvement district in the amount of $1,453,003.90 are

now outstanding. In 1928 the taxes against parcel "B" as a portion of such district were $2,515.50. No taxes have been paid since date of sale, and on May 21, 1934, said parcel was deeded to petitioner by the city assessor, tax and license collector under said act and Ordinances 490 and 3108 of the City of Pasadena. Petitioner holds said tax deed to the parcel. Forty thousand three dollars and sixteen cents unpaid taxes levied against it because of said obligation under the improvement act are outstanding. On the basis of the ratio of the value of the parcel to the total bonded debt of the district, such taxes for the future are estimated to be $136,404.18, not including any amount to cover nonpayment of such taxes by other property owners in said district. Parcel "B" is further obligated on a street bond by proceedings under the Improvement Act of 1911 (Stats. 1911, p. 730), the amount required to retire said bond being $8,970.15. County taxes of $8,483.84 and city taxes of $7,199.84 were levied against parcels "A" and "B" as a single parcel, and are unpaid.

If proposition No. 1 is adopted, the $215,000 bonds will pay all these charges against parcel "B", with $14,000 remaining over. If as an alternative No. 2 is adopted, it is proposed to pay the charges accrued to date and invest the balance derived from the sale of the bonds with the expectation that the principal and estimated interest together will be sufficient to pay the remaining amounts charged against the property as they become due.

Respondent bases her refusal to proceed with the election on the following grounds:

1. That since petitioner holds tax title to parcel "B" such charges against it need not be paid, and any such payment out of bond proceeds would be unlawful as a gift of public funds.

2. That proposition 2 would not provide sufficient money from sale of the bonds issued thereunder to pay the aggregate past due and estimated future charges against parcel "B"; that entry into possession and performance of other necessary acts by petitioner would constitute an incurring of debt in such amount as would exceed the income and revenue of the city for the current year and would violate article XI, section 18, of the Constitution of California.

3. That if the other property in the acquisition and improvement district failed to pay the assessments when due, the total amount of nearly a million and a half dollars might under the act fall in its entirety upon parcel "B", and would be an amount far in excess of the proceeds of bonds issued under either proposition.

*Amici curiae* on behalf of respondent have interposed further objections to the granting of the writ, summarized as follows: (1) The Municipal Bond Act of 1901 under which such bonds would be issued does not authorize such bonds to pay taxes and assessments. (2) The obligation to pay such taxes and assessments is one imposed by law and not one for which bonds can be issued under article XI, section 18, Constitution of California. (3) The assent of two-thirds of the electors to the proposed bonds would not constitute an assent to the incurring of the obligation arising out of future acquisition and improvement district assessments. (4) That the former owners have the right to redeem even if petitioner enters the land and pays the charges as proposed. (5) That the proposed bond issues are *ultra vires*.

Passing to a consideration of the objections above outlined, it appears that neither of said proposed bond issues involves a gift of public funds. Section 47 of Ordinance 3108 of the City of Pasadena, as amended, in effect at the time the tax deed to petitioner was executed, provides in part: "A redemption of property sold [for nonpayment of taxes] may be made by the owner or any person in interest within five years from the date of the sale to the city or at any time prior to the entry upon or sale of said property by the city." This contemplates, as the first step toward perfecting of the title by the city in this case, the entry by it upon the property. Section 58 of that ordinance provides: "Whenever the city shall have become the owner of any property sold for taxes and the deed to the city has been filed with the city clerk and recorded or registered as provided in section 53 hereof, the right of redemption may be terminated absolutely by the city by its entry thereon and the adoption thereof for municipal use and the performance by the city of any acts necessary in the perfection of title in the manner provided by law." From these sec-

tions it appears that the entry by petitioner on the property would cut off the right of redemption.

Our attention is directed to section 15 of article 12, Pasadena City Charter, which provides in part: "The mode and manner of collecting such municipal taxes and enforcing such tax lien and the proceedings thereafter shall be prescribed by ordinance and shall conform as nearly as practicable to the general law governing county taxes." It is suggested that this portion of the charter applies to Ordinance 3108, and that when that ordinance requires the city to perform acts necessary in the perfection of title in the manner provided by law, it refers to and embodies in it the provisions of Political Code, sections 3897a and 3897b. Those sections require deposit by the city with the tax collector of sufficient funds to pay all delinquent taxes, special assessments, penalties, charges and expenses.

It would appear that the above charter provisions would not have the suggested effect. The charter is subject to the rule of legislative interpretation that "the state and its agencies are not bound by general words limiting the rights and interests of its citizens" unless included expressly or by necessary implication. (*Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 Pac. 676].) The determination of this question is unnecessary, however, in view of other considerations.

The special assessments in this case, imposed under the Acquisition and Improvement Act of 1925 and the Improvement Act of 1911, are not obviated by the deed to or entry by petitioner, and no action except payment by petitioner is effectual to relieve it of that burden. As the court observed in *City of Inglewood* v. *County of Los Angeles,* 207 Cal. 697 [280 Pac. 360]: "There is a broad and well recognized distinction between a tax levied for general governmental or public purposes and a special assessment levied for improvements made under special laws of a local character. . . . 'While these local assessments are taxed under a taxing power, they are not taxes in the ordinary understanding of that term; . . . ; consequently, the usual exemptions from taxation will not preclude the property exempt being subject to them.' "

It is suggested that the holders of other land in the district would be deprived of their property without due process of law, contrary to amendment XIV, Constitution of

the United States, if the city by its mere entry upon such a parcel of land were to absolve it of assessments theretofore levied against it, by shifting that burden onto other property in the district, or that such a course would impair the obligation of the contract of the holders of such improvement bonds by reducing the security for their bonds, contrary to article I, section 10, Constitution of the United States. The true and fundamental reason why the property remains subject to the assessments levied against it until paid, even though the city enters and devotes the land to public use, lies in the fact that the improvement acts cited expressly subject the land within the district to the assessments levied to pay installments due on improvement bonds. Where there is legislative authority therefor, property owned by a municipality and devoted to public use may be liable for special assessments for public improvements. This was pointed out by the court in *City of Inglewood* v. *County of Los Angeles, supra.*

█ It is not contrary to article XI, section 12, of the Constitution of California for the legislature to make such provision, since it is not the imposition of a tax on the city by the legislature but a provision whereby such improvement district may be created. (*American Co.* v. *City of Lakeport*, 220 Cal. 548 [32 Pac. (2d) 622].) The district having been created, and having included in it the land comprising parcel "B", the city in entering upon such property after the imposition of the assessment is in the same position that it would occupy if it had owned the property and consented to the obligation at the time it was created, even though it is now entering upon the land with the avowed intention of devoting it to public use.

█ With reference to the city and county taxes past due on the property, it is urged that under Political Code, section 3804a, such taxes would be discharged and canceled upon application to the body imposing them. (*City of Los Angeles* v. *Board of Supervisors*, 108 Cal. App. 655 [292 Pac. 539].) They are not so canceled nor otherwise affected until and unless the body seeking relief from such taxes has complied with the provisions of the section just cited and has made application for such cancellation. (*People* v. *Board of Supervisors*, 126 Cal. App. 670 [15 Pac. (2d) 209.) Petitioner has not sought cancellation nor reduction

of the past due taxes here in question, but has proposed by the bonds here assailed to provide funds to pay them. Our attention has not been directed to any authority which would construe the provisions of Political Code, section 3804a, permitting such an application for relief from taxes, as requiring the body entitled thereto to make such a request. Such unpaid taxes do not dissolve by merger in the greater estate upon acquisition of tax title by the city. (*City of Santa Monica* v. *Los Angeles County,* 15 Cal. App. 710 [115 Pac. 945].) The interest of the city and county in the land by reason of unpaid taxes continues unimpaired and undiminished unless the taxes are paid or canceled.

The money derived from the sale of the proposed bonds, far from being an unlawful gift of public funds, would be a proper use of public money for a public purpose, to wit, the payment of an obligation or burden imposed upon the land which the law requires to be paid before the city can perfect its title to the same. The fact that incidental thereto a private benefit may result is no sufficient obstacle to the course outlined. It is well understood that public improvements, such as streets, parks, etc., for which public funds are properly expended, result in private benefits to individual citizens. (*Sacramento etc. Drainage Dist.* v. *Riley,* 199 Cal. 668 [251 Pac. 207]; *Patrick* v. *Riley,* 209 Cal. 350 [287 Pac. 455]; *American Co.* v. *City of Lakeport, supra.*)

The suggestion that the bonded indebtedness cannot be incurred by the propositions in issue here for the purpose of paying taxes and assessments on parcel "B" because the law does not authorize such bonds for such purpose (Municipal Bond Act of 1901, Stats. 1901, p. 27), confuses the payment of such obligations on property already held by the city with such a payment on property like the parcel under discussion, to which the city received a deed after the obligation to pay such charges had accrued. The tax title held by the city is defeasible, that is, the owner has a right of redemption unless the city enters upon the land. To complete its title the city must (1) enter upon the land, (2) pay uncanceled past taxes and past assessments and (3) assume the future assessments to pay its share of the improvement bonds. The proposed bonds are to enable the city to perform acts in the future to acquire complete title to the land,

which is precisely what section 58 of Ordinance 3108 requires when it provides that the city after entry shall perform "any acts necessary in the perfection of title in the manner provided by law".

In *City of Pasadena* v. *McAllaster,* 204 Cal. 267 [267 Pac. 873], the court in considering the question whether the taxpayers of that city could be required to pay out of general funds for assessments to be levied against city property for improvements under the Acquisition and Improvement Act of 1925, decided that under the facts they could not be subjected to this burden and declared that "if the improvements be important enough to warrant expenditure of general funds in excess of ordinary income and revenue, the authorities having the matter in charge should not hesitate to submit the question of the incurring of the liability therefor to the electors for their approval or rejection as plainly contemplated by the constitutional provision". Similar reasoning would direct the course which petitioner seeks to follow in this case.

█ The further contention that proposition No. 2 would be contrary to section 18, article XI, of the Constitution of California does not find support in that section. Respondent reasons that since the proceeds of bonds sold under proposition 2 would not equal the total of past taxes and assessments plus the total future liability under the Acquisition and Improvement Act of 1925 above set out, it would be an obligation in excess of the amount for which money was provided in the current year. That section does not require that money be available this year to pay assessments in future years. While the assumption of such past due and future assessments on land used in the performance of a public function is the incurring of a debt or obligation within the meaning of that section of the Constitution (*City of Pasadena* v. *McAllaster, supra;* see, also, *Southlands Co.* v. *City of San Diego,* 211 Cal. 646, 668 [297 Pac. 521]), either proposition number "1" or "2" would make provision therefor as required by the said section. "Section 18 of article XI of the Constitution merely prohibits the incurring of an indebtedness exceeding in any year the income and revenue provided for such year. It does not require that the money be on hand at the time the indebtedness is incurred or, in

fact, that the income should have been provided at that time. It is sufficient if the indebtedness is within the income which has been provided or which will in the ordinary course be provided within the year." (*Wyckoff* v. *Force,* 61 Cal. App. 246, 249 [214 Pac. 489].)　 Furthermore, such an obligation is one voluntarily incurred and not imposed by law, since it is the consequence of wilful, affirmative acts as above indicated, and "under these circumstances it would seem idle to argue that the obligation thus assumed is imposed by the law and therefore involuntary". (*City of Pasadena* v. *McAllaster, supra.*)

Respondent is apprehensive lest the anticipated interest earnings of the unused proceeds of bonds issued if proposition 2 is adopted be insufficient, when added to the principal, to pay the future assessments. The law only requires reasonable foresight and prudence, based on past experience and present conditions, and the fact that such expectation might not be fully realized would not foreclose petitioner from the course proposed. (*Addyston Pipe & Steel Co.* v. *Corry,* 197 Pa. St. 41 [46 Atl. 1035, 80 Am. St. Rep. 812].)　 Nor would the potential detriment to parcel "B", due to the cumulative imposition upon it of unpaid assessments levied upon other property in the assessment district (*American Securities Co.* v. *Forward,* 220 Cal. 566 [32 Pac. (2d) 343]), preclude its acquisition by the city by reason of section 18 of article XI of the Constitution. It constitutes a contingent obligation which would not be realized nor complete until and unless other persons failed to do that which the law requires and experience indicates they will ordinarily do. "The inhibitions of the constitutional debt limit do not apply to contingent obligations." (*American Co.* v. *City of Lakeport, supra.*) "A sum payable on a contingency is not a debt nor does it become a debt until the contingency happens." (*Doland* v. *Clark,* 143 Cal. 176 [76 Pac. 958].) In addition, the property upon which such assessments are thus unpaid still remains part of the tax-base underlying the improvement bonds, and is subject to sale for nonpayment of the charges against it, from the proceeds of which sale the amount levied against it might be recouped. As the court said in *Municipal Imp. Co.* v. *Thompson,* 201 Cal. 629, at page 637 [258 Pac. 955] : "If

some of the special assessment payments become delinquent from year to year it would not follow that the lands of the delinquent owners would be relieved from paying the charge. It would be merely postponed. With the penalties and costs accruing to the bond fund it is reasonable to assume that the burden is equalized during the period that the bonds are outstanding.''

 The second contention advanced by counsel as *amici curiae* as above cited is to the effect that the adoption of propositions 1 or 2 by two-thirds of the electors would not constitute an assent by that number of electors to incurring the obligation for which the proceeds of the bonds would be paid. Considered in the light of the language already quoted from the case of *City of Pasadena* v. *McAllaster, supra,* it would seem unreasonable to hold that when two-thirds of the electors vote to obligate themselves for the cost of a project a separate vote is required to ascertain whether they desire its accomplishment. The voting of the bonds by the adoption of either proposition will constitute an effectual assent by the voters which will fully comply with the constitutional requirements.

 It is not questioned that the laws in force at the time the property is sold for delinquent taxes are applicable to the redemption of said property from said taxes. (*San Diego County* v. *Childs,* 217 Cal. 109 [17 Pac. (2d) 734].) Ordinance 490 of the City of Pasadena was in effect at the time of the tax sale, and provided in section 44 that ''a redemption of property sold may be made by the owner or any person interested within five years from date of sale to the city or at any time prior to the entry upon or sale of said land by the city''. The rights of the owners of the property which was sold for nonpayment of taxes and assessments are therein defined, and the proposed action by petitioner would not impair nor violate the rights of such owners as they existed at the time of the tax sale. After entry by the city their rights are terminated and they have no right to reenter except by virtue of some new title subsequently acquired.

The objection that the proposed bond issue is *ultra vires,* in so far as it requires discussion, is covered by the foregoing views.

The writ is granted and respondent is directed to proceed with the performance of her official duties as prayed for in the petition herein.

Stephens, P. J., and Desmond, J., concurred.

THE COURT.—An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 4, 1934, and the following opinion then rendered thereon:

Judgment in this case was entered in the District Court of Appeal on September 27, 1934. The Constitution, article VI, section 4c, grants power to the Supreme Court to order any cause pending before a District Court of Appeal to be heard and determined by the Supreme Court. Such order may be made before judgment has been pronounced by the District Court of Appeal or, in civil cases, within thirty days after judgment in the appellate tribunal shall have become final.