[No. C042315. Third Dist. Dec. 16, 2003.]

STEVE WESTLY, as Controller, Etc., Plaintiff and Appellant, v.
U. S. BANCORP et al., Defendants and Respondents.

[No. C042758. Third Dist. Dec. 16, 2003.]

STEVE WESTLY, as Controller, Etc., Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Richard J. Chivaro, Chief Counsel, Shawn D. Silva and Ana Maria Garza, for Plaintiff and Appellant.

Sonnenschein Nath & Rosenthal, Sanford Kingsley and Thomas E. Mc-Donald, LeBoeuf, Lamb, Greene & MacRae, and Charles A. Ferguson, for Defendants and Respondents Allstate Insurance Company et al.

Sheppard, Mullin, Richter & Hampton, Robert J. Stumpf and Amy K. Skryja, for Defendants and Respondents U. S. Bancorp et al.

**OPINION**

**BLEASE, J.**—In this consolidated appeal, Steve Westly, as state Controller

(the Controller),[1] appeals from the judgments entered after the trial court granted the defendants', Allstate Insurance Company et al. (Allstate) and U.S. Bancorp, et al. (U.S. Bancorp), motions for summary judgment based upon Code of Civil Procedure section 1577.5.[2]

Section 1577.5 grants amnesty from the interest charges that otherwise would be imposed on the holders of escheated property who fail to deliver the property to the state in a timely manner, if the "property [is] paid or delivered to the Controller at any time on or before December 31, 2001." (Stats. 2000, ch. 267, § 1.)[3] The Controller argues that section 1577.5 is prospective only and that the retroactive forgiveness of interest charges would constitute a gift of public funds in violation of article XVI, section 6 of the California Constitution.

We shall conclude the statute is retroactive but its application to defendants, who delivered the property to the state prior to the enactment of section 1577.5, is unconstitutional as a gift of public funds. We shall reverse the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

The Unclaimed Property Law (UPL), sections 1500 et seq., establishes the procedure for the reversion of unclaimed personal property to the state. It has two objectives, "(1) to reunite owners with unclaimed funds or property, and (2) to give the state, rather than the holder, the benefit of the use of unclaimed funds or property." (*Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 74 [210 Cal.Rptr. 351].)

A holder of unclaimed property is defined as a person or trustee in possession of property subject to the UPL "belonging to another, or who is trustee in case of a trust, or is indebted to another on an obligation subject to [the UPL]." (§ 1501, subd. (e).) The holder is required to report the unclaimed property in its possession by a deadline and to deliver it to the Controller. (§§ 1530, 1532.) If the holder fails to deliver the property to the Controller as required, the holder must pay a fine if the failure is willful (§ 1576) or interest at the rate of 12 percent per annum if the failure is not willful (§ 1577).

On August 31, 2000, the Legislature enacted section 1577.5 by sending the enrolled copy signed by the Governor to the Secretary of State. It provided

---

[1] By reason of an election held in November 2002, as of January 1, 2003, Kathleen Connell was replaced as Controller by Steve Westly.

[2] A reference to a section is to the Code of Civil Procedure unless otherwise designated.

[3] The date was changed to December 1, 2002, by a 2002 amendment. (Stats. 2002, ch. 22, § 1, eff. April 17, 2002.)

that the 12 percent interest charge "shall not apply to, and interest shall not be imposed upon, any escheated property paid or delivered to the Controller at any time on or before December 31, 2001." (Stats. 2000, ch. 267, § 1.)

The defendants remitted the escheated property to the Controller in 1998 and 1999, prior to the enactment of section 1577.5 andprior to its effective date (January 1, 2001), but after the property had accrued interest charges pursuant to section 1577. The Controller calculated that Allstate owed interest charges of approximately $478,000 and U.S. Bancorp owed interest charges of approximately $476,000.

Defendants filed motions for summary judgment, arguing they were exempt from interest charges by reason of section 1577.5. The Controller replied that section 1577.5 does not operate retroactively and that to forgive the payment of interest by the defendants would amount to a gift of public funds in violation of article XVI, section 6 of the California Constitution.

The trial court granted defendants' motions for summary judgment, and judgments were entered in defendants' favor. We consolidated the defendants' subsequent appeals.

## DISCUSSION

### I

### Retroactivity

■ Statutes are not retroactive unless the Legislature has expressly so declared in clear language. (*Di Genova v. State Board of Education* (1962) 57 Cal.2d 167, 174, 176 [18 Cal.Rptr. 369, 367 P.2d 865].)

Section 1577.5, as enacted in 2000, satisfies that standard. It provides: "Section 1577 [which imposes a 12 percent interest charge on unclaimed property not delivered to the Controller in a timely manner] shall not apply to, and interest shall not be imposed upon, any escheated property paid or delivered to the Controller *at any time on or before December 31, 2001.*" (Stats. 2000, ch. 267, § 1, italics added.)

Section 1577.5 became effective on January 1, 2001. Since it applies to property delivered to the Controller "on or before December 31, 2001," it includes the period prior to its effective date, since that period also is before December 31, 2001. In addition, subdivision (c) states that section 1577.5 does not "create an entitlement to a refund of interest paid to the Controller

prior to [its] effective date," a provision that would make no sense if section 1577.5 were not retroactive.

■ Thus, the plain meaning of section 1577.5 is that exemption from interest charges is granted the holder of property which the holder delivers to the Controller prior to its effective date of January 1, 2001, unless the holder had paid the accrued interest prior to that date.

II

Gift of Public Funds

Article XVI, section 6 of the California Constitution provides in pertinent part:

"The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."

Civil Code section 1146 defines a gift as "a transfer of personal property, made voluntarily, and without consideration." Notwithstanding, the gift the Constitution prohibits is not limited to personal property, "but includes all appropriations of public money for which there is no authority or enforceable claim, or which perchance may rest upon some moral or equitable obligation." (*Allied Architects' Assn. v. Payne* (1923) 192 Cal. 431, 439 [221 P. 209].)

The cancellation of a debt may constitute a gift even though nothing is transferred. (See *County of San Bernardino v. Way* (1941) 18 Cal.2d 647, 654 [117 P.2d 354] [act of canceling county taxes is a gift of public funds even though nothing is literally handed over].) Thus, the cancellation of uncollected property taxes is a gift that is unconstitutional unless it is for a public purpose. (*City of Ojai v. Chaffee* (1943) 60 Cal.App.2d 54, 59 [140 P.2d 116].) Likewise, release of a tax lien without consideration would violate article XVI, section 6. (*Community Television of Southern California v. County of Los Angeles* (1975) 44 Cal.App.3d 990, 996–997 [119 Cal.Rptr. 276].) Inheritance taxes, which are fixed and determined at the date of death, may not be reduced thereafter. (*In re Skinker's Estate* (1956) 47 Cal.2d 290, 296 [303 P.2d 745].)

■ For these reasons the forgiveness of interest charges constitutes a "thing of value," as provided in article XVI, section 6 of the California Constitution, and, absent consideration for the forgiveness, constitutes a gift of public funds.

■ A reason that would remove a gift from the ambit of article XVI, section 6 is that it is to be used for a public rather than a private purpose. (*Patrick v. Riley* (1930) 209 Cal. 350, 356 [287 P. 455]; *City of Oakland v. Garrison* (1924) 194 Cal. 298, 302 [228 P. 433].) ■ A retroactive application of a statute may be upheld only if its application serves a valid public purpose. (*County of Sonoma v. State Board of Equalization* (1987) 195 Cal.App.3d 982, 995 [241 Cal.Rptr. 215].) That is because "[t]he benefit to the state from an expenditure for a 'public purpose' is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited there from. [Citation.]" (*County of Alameda v. Janssen* (1940) 16 Cal.2d 276, 281 [106 P.2d 11]; cf. Civ. Code, § 1146.)

■ The text of section 1577.5 does not set forth a public purpose. However, that failure is not determinative and we may infer a public purpose from extrinsic matter. (*Scott v. State Board of Equalization* (1996) 50 Cal.App.4th 1597, 1604 [58 Cal.Rptr.2d 376].) In this case we can discern the purpose of the statute from its legislative history.

The Senate Judiciary Committee analysis of the bill by which section 1577.5 was enacted stated its purpose was to encourage holders of unclaimed property to establish proper reporting practices, to encourage compliance with the law without the need for litigation, and to encourage the holders to come forward with unclaimed property that potentially could have resulted in the remittance of millions of dollars to the state. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1888 (1999–2000 Reg. Sess.) as amended Apr. 3, 2000, pp. 4, 5, 6.) The legislation was intended to motivate holders of unclaimed property to surrender escheated property, which would confer a monetary benefit on the state. Such a purpose is intended to benefit the public in general, and is therefore a public purpose satisfying article XVI, section 6.

The Controller argues that even if section 1577.5 has in general a valid public purpose, no public purpose is served by its application to defendants. We agree.

Defendants were not encouraged by the existence of the legislation to surrender the unclaimed property in their possession to the state since they delivered it to the Controller prior to its effective date and prior to its enactment.

Defendants argue that another purpose of the legislation is to ensure its fair application to holders who voluntarily surrendered the escheated property before the legislation was enacted. They infer this purpose from the comments of the Governor in his veto message of prior legislation.

In 1999, the Legislature passed Assembly Bill No. 444, which, like section 1577.5, created an exemption from interest payments for specified holders of

unclaimed property but limited the exemption to the delivery of escheated property "on or after January 1, 2000 and prior to August 1, 2000."

Assembly Bill No. 444 was vetoed by the Governor on October 6, 1999. In his veto message to the Assembly, the Governor complained that the bill "would allow amnesty only for holders that belatedly come forward during the limited amnesty period, but leaves those companies that previously voluntarily remitted unclaimed property to the state potentially liable for interest." The Governor stated, "[i]t does not seem fair and reasonable that holders who comply with the law only upon the inducement of an amnesty program should be placed in a more favorable position than those who previously voluntarily remitted unclaimed property to the state."

Section 1577.5 was then enacted. While its purpose may have been fairness to holders such as defendants, the public purpose of the statute, i.e., the purpose which benefited the state and which is the only relevant purpose in analyzing the constitutionality of the statute, was to encourage the surrender of unclaimed property. The application of the statute to defendants does not serve this purpose.

Defendants also argue the constitutional prohibition against a gift of public funds is not violated where there is merely an incidental benefit to private persons. While this is a correct statement of the law (*American Co. v. City of Lakeport* (1934) 220 Cal. 548, 556 [32 P.2d 622]), the cases in which this statement appears as more than dicta apply the rule to situations in which the expenditure of funds is primarily for a public purpose but incidentally benefits a private party.

For example, in *City of Pasadena v. Chamberlain* (1934) 1 Cal.App.2d 125, 134 [36 P.2d 387], the court held the city would not make an unconstitutional gift of public funds by paying obligations owed on land it acquired by tax default and which it intended to use as a park, because public improvements will always result in private benefits to individual citizens. And in *Board of Supervisors v. Dolan* (1975) 45 Cal.App.3d 237, 241–246 [119 Cal.Rptr. 347], the court upheld legislation that authorized low-interest loans to finance residential rehabilitation in depressed residential areas because, even though the loans benefited the private parties to whom the loans were made, the loans served the public purpose of preventing slums.

Here, by contrast, the expenditures of which the Controller complains, i.e., those to holders who surrendered unclaimed property before passage of the amnesty statute, are separate expenditures that do not primarily further the public purpose of the statute. It cannot be said that these expenditures primarily serve a public purpose and only incidentally benefit private individuals.

Illustrative is *Patrick v. Riley, supra,* 209 Cal. 350, where the Legislature passed the Bovine Tuberculosis Law providing for the payment of money to the owners of cattle slaughtered because they were found to be infected. (*Id.* at p. 352.) The court found the payments were pursuant to a public purpose because they tended to dissipate the opposition of the cattle owners to the destruction of their cattle, thereby promoting public health. (*Id.* at p. 357.) However, the court stated there "would, perhaps, be merit in respondent's point if this were a case where the legislature had undertaken to vote compensation retrospectively to the owners of diseased cattle destroyed prior to the enactment of the statute." (*Id.* at p. 359.)

Also in *County of Los Angeles v. Jessup* (1938) 11 Cal.2d 273 [78 P.2d 1131], the Old Age Security Act provided prior to 1937 that a county could obtain a lien on the real property of an aid recipient for the amount of aid given. (*Id.* at pp. 275–277 [disapproved on other grounds in *County of Alameda v. Janssen, supra,* 16 Cal.2d at p. 284].) A 1937 amendment purported to release all liens created under the act. (*Id.* at p. 277.) The Supreme Court held the amendment was unconstitutional because it purported to release liens upon property even though the property was no longer owned by the aid recipient, but had been purchased or acquired by third parties. (*Ibid.*) The court was convinced the amendment would release liens against property whose owners were never entitled to receive aid, in violation of the Constitution.[4] Because the statute was not severable, it violated the prohibition against making a gift of public funds. (*Id.* at p. 278.)

In *Patrick v. Riley, supra,* 209 Cal. 350, and *County of Los Angeles v. Jessup, supra,* 11 Cal.2d 273, the public purposes furthered by the expenditures authorized under the statutes did not prevent other expenditures not achieving the public purpose of the legislation from being unconstitutional.

■ For these reasons we conclude that the application of section 1577.5 to holders of property that was surrendered to the state prior to the date the section was enacted is unconstitutional because such an application does not advance a public purpose.

■ In the present case the defendants became obligated by section 1577 to deliver escheated property to the Controller prior to the date section 1577.5 was enacted. Accordingly, the trial court erred in granting the summary judgments.

---

[4] Article IV, section 31 of the California Constitution, the precursor to article XVI, section 6, and the provision in effect in *Jessup,* provided aid to "aged persons in indigent circumstances" was not a violation of the prohibition against making a gift of public funds. (*County of Los Angeles v. La Fuente* (1942) 20 Cal.2d 870, 876 [129 P.2d 378].)

## DISPOSITION

The judgments are reversed. Appellant shall recover its costs on appeal.

Scotland, P. J., and Robie, J., concurred.

The petition of all respondents for review by the Supreme Court was denied March 17, 2004. Chin, J., did not participate therein.