[L. A. No. 18258. In Bank. Sept. 29, 1942.]

COUNTY OF LOS ANGELES, Respondent, v. GRETTA La FUENTE, Appellant.

Gretta La Fuente in pro. per., for Appellant.

J. H. O'Connor, County Counsel, and L. K. Vobayda and Gerald G. Kelly, Deputy County Counsel, for Respondent.

EDMONDS, J.—The Old Age Security Law (Welf. & Inst. Code, §§ 2000-2228) gives a county a cause of action against specified responsible relatives of a person who has received aid under that statute. The appellant is the defendant in such an action and denies liability for the amount paid by the county of Los Angeles to her parents upon the ground that they were ineligible for benefits because of an offer of support made by her to them.

Parker and Isa Gray, the parents of the appellant, received old age security benefits totaling $738 from October 1, 1937, to February 1, 1939. From her employment as a teacher in the public schools, the appellant earned $2,610 in the school year 1937-38, $2,720 in 1938-39, and at the time of the trial of this action in December, 1939, she was earning $293 per

month on a ten-month school year basis. She has an eighteen-year-old son dependent upon her for support.

When Mr. and Mrs. Gray applied to the county for old age pensions, Mrs. La Fuente requested it to deny their applications upon the ground that she was able and willing to support them in her home. Her offer in this regard is not only undisputed but was admitted by Mrs. Gray, who also conceded in her testimony that Mrs. La Fuente stated they might bring their incompetent daughter with them. And counsel for the county stipulated that the appellant notified the agencies administering the law allowing old age security benefits she would care for her parents if they would come and live with her.

Mrs. Gray frankly stated the reasons why she and her husband did not accept their daughter's proposal. In the first place, said Mrs. Gray, "we have never gotten along in our lives, and we could not get along. She has a suspicious disposition, and she has a jealous disposition. . . . For another thing, I have an incompetent daughter that I have taken care of for eighteen years, and I could not throw her down because she has nobody else to lean on. I am the only one she has confidence in, and her home is her whole life."

The appellant did not seriously challenge the county's showing that she is financially able to contribute to the support of her parents, basing her defense primarily upon her offer to care for them in her own home. She admitted that she owns the house in which she is living, and that, for a number of years, she has been a teacher in the public schools. But the trial court made findings that she was not "ready, able and willing, nor did she at any time offer to support . . . her father and mother in adequate living quarters"; also, that she did not notify the respondent's Department of Charities of her willingness to render financial aid to her parents. Judgment followed in favor of the county for the full amount of the benefits given Mr. and Mrs. Gray, with interest.

The appellant's contentions upon appeal are numerous, and not all of them are pertinent. Her argument that the county "secretly" extended aid to her parents from 1934 to the spring of 1937, without her knowledge and prior to any demand upon her to support them, is of course immaterial, since the payment by the county of the amount sued

for did not commence until October, 1937. Equally without the issues of this case is the claim that Mrs. Gray was ineligible for aid because she could have secured compensation for her care of an incompetent daughter (the appellant's sister) by suing the daughter's husband. Of more substance is the statement that her parents were not in need because she had offered, and still offers them, support in her home. The appellant also argues that, since no objection has ever been made by her parents to the physical inadequacy of her home, and the county did not question its facilities until the trial of this action, the court should not have considered evidence concerning the accommodations offered by her. Other points made by the appellant consist of assertions that a number of the trial court's findings of fact are not supported by the evidence.

The county takes the position that, under the evidence, the home offered Mr. and Mrs. Gray by the appellant was not properly habitable and that the relationship between the appellant and her parents is entirely incompatible. It also insists that Mr. and Mrs. Gray's applications fulfilled the requirements of the Old Age Security Law, and the offer of aid by the daughter, even if adequate, did not deprive them of their right to secure its benefits.

The defense of offer of support may be considered (1) as affecting the eligibility of the applicants for benefits under the statute, and (2) as affecting the liability of the appellant, as a responsible relative, to reimburse the county extending the aid, irrespective of the question of eligibility. For there is no evidence to support the court's finding that the appellant was not ready, able and willing to support her parents or that she made no offer to support them in adequate living quarters. Although Mrs. Gray placed the refusal to live with her daughter, in part, upon the idiosyncrasies of the latter's disposition, it is apparent from the record that the motivating influence was her desire to continue the care of the incompetent daughter in the home which they then occupied. It would be very dangerous to the incompetent, said Mrs. Gray, to have different arrangements made for her.

And if the court's reference to "adequate living quarters" was based upon the testimony of a health inspector of the city of Los Angeles, the record shows that, upon a final inspection of Mrs. La Fuente's house, he found plumbing conditions passable. His criticism of the building as

"unorthodox and very incomplete" and the statement that the kitchen was unsanitary because, on one occasion, "it wasn't clean, it was dirty; there were dirty dishes and the stove . . . and the floor had not been attended to", constitute opinions which do not justify the designation of the house as not being "adequate living quarters." In this connection, it is significant that at no time has Mrs. Gray, or her husband, refused to live with her daughter upon the ground that the house she occupies is not adequate. Nor has the county ever contended, until the time of trial, that Mrs. La Fuente's home was unsuitable for her parents. Upon this record, therefore, the question is whether a child who is financially able to contribute to a parent's support may be compelled to reimburse a county, in whole or in part, for old age benefits if the parent has refused to live with the child in reasonably suitable quarters.

As enacted in 1929, the Old Age Security Act (Stats. 1929, ch. 530, p. 914; Deering's Gen. Laws, 1931, Act 5846) made certain requirements of an applicant concerning age, citizenship and residence, and in addition provided that to be eligible one must have "no children or other person able to support him and responsible under the law of this state for his support." And the board of supervisors of a county extending the aid could require the recipient to transfer his property to the county as security for the aid so advanced. Quite logically, the Legislature gave the county no right to reimbursement against a responsible relative, for if the applicant had such a relative he was not entitled to benefits. The statute apparently contemplated that an aged person, neglected by a responsible relative, should enforce that liability by legal action. (Civ. Code, § 206; see note, 26 Cal. L. Rev. 339-340.)

Ineligibility arising from the existence of a financially responsible relative was retained when the Legislature amended the statute in 1935 to read: "Aid may be granted under this act to any person who . . . Has no . . . Husband, wife or child, able and responsible under the law of this State for his support . . ." (Stats. 1935, pp. 1767-68, § 2) and the aid granted expressly was made a debt of the recipient, including a lien against his real property. (§ 4.) But there was no provision requiring responsible relatives to reimburse the county.

In 1937, these legislative policies were radically changed

by the Old Age Security Law, enacted as a part of the Welfare and Institutions Code. (Stats. 1937, ch. 375; Welf. & Inst. Code, §§ 2000-2228.) The new statute provided, in part: "Aid shall be granted under this chapter to any person who comes within all of the following descriptions: . . . Who is not receiving adequate support from a husband, wife, or child, able and responsible under the law of this State to furnish such support." (§ 2160.) And the debt or liability created for aid granted was shifted from the recipient thereof to a spouse or adult child pecuniarily able to support the recipient. (§ 2224.) The Legislature also declared that all liens theretofore imposed upon the property of a recipient should be discharged. (§ 2225 [subsequently held unconstitutional in *County of Los Angeles* v. *Jessup*, 11 Cal. (2d) 273 [78 P. (2d) 1131]. But *cf. County of Alameda* v. *Janssen*, 16 Cal. (2d) 276 [106 P. (2d) 11, 130 A. L. R. 1141].)

The rights of the parties must be measured by the 1937 statute, and to hold that an unaccepted offer of support in the home of a relative renders ineligible the applicant for old age security benefits requires the interpolation of words which the Legislature has not used. There is no ambiguity in section 2160 of the Welfare and Institutions Code, and no rule of construction allows a court to write into a clear provision of law an exception which would restrict its operation.

It is true that the Old Age Security Law declares: "Subject to the provisions of this chapter, every person residing in the State, if in need, shall be entitled to aid in old age from the State." (§ 2001, *supra.*) But the *"need"* of the applicant necessary to qualify for the benefits of the law is defined by the Legislature to be the absence of actual receipt of support by the applicant from responsible relatives and by the property limitations of the law. (§§ 2163, 2164, *supra.*) Under these sections, an applicant may be eligible although he owns personal property not exceeding $500 in value (§ 2163) and real property having an assessed value not in excess of $3,000. (§ 2164.)

The right to receive benefits is not conditioned upon the destitution and pauperism required for indigent relief provided by the state and its subdivisions under division IV of the Welfare and Institutions Code. (Welf. & Inst. Code, §§ 2500-2615.) And although the Old Age Security Law is

declared to be an additional method of supporting and providing for the aged poor (Welf. & Inst. Code, § 2004), yet no person receiving aid under its provisions "shall be deemed a pauper by reason thereof. No warrant drawn in payment of the aid given under the provisions of this chapter shall contain any reference to indigency or pauperism." (§ 2009.) Further dignity is given to the receipt of old age security benefits by the policy that such aid shall be provided to every applicant in his home, if possible (§ 2005), and the benefits must be paid by warrant and not in the form of merchandise orders for food, rent or otherwise. (§ 2183.)

Both the letter and the spirit of the Old Age Security Law clearly show that only the receipt of support from responsible relatives should render the applicant ineligible for benefits under it. The reason for the social policy given effect by the statute is clearly illustrated in the present action, where the appellant's mother asserts that she and her daughter have never been able to live together harmoniously. Certainly the state may provide a needy aged person with a certain measure of independence and happiness of mind, in addition to physical security. Whether it is wise to give benefits to one who has a child willing and able to support him is a question for the attention of the Legislature and not for the courts. (*Moore* v. *State Social Security Commission,* 233 Mo. App. 536, 452 [122 S. W. (2d) 391, 394]; *Conant* v. *State,* 197 Wash. 21 [84 P. (2d) 378].)

But, argues the appellant, may an extension of aid under such circumstances be justified under the California Constitution?

The only provision seriously urged as conflicting with the legislative grant of old age security benefits is section 31 of article IV, prohibiting the Legislature from making or authorizing a gift of public money or thing of value to any individual or corporation. The section expressly provides, however, that nothing shall prevent the Legislature from granting aid pursuant to section 22 of article IV, which in turn authorizes the granting of aid to "aged persons in indigent circumstances." Therefore, the legislative provision for old age security benefits does not constitute a violation of the Constitution if (1) it is not a gift of money or thing of value, or (2) it is a grant of aid to indigent aged.

In determining whether an appropriation of public money is to be considered a gift within the constitutional

prohibition, the primary question is whether the funds are to be used for a public or a private purpose. If the money is for a public purpose, the appropriation is not a gift even though private persons are benefited by the expenditure. (*County of San Diego* v. *Hammond,* 6 Cal. (2d) 709 [59 P. (2d) 478, 105 A. L. R. 1155] [use of county funds to pay delinquent assessments on over-burdened property]; *City of Oakland* v. *Garrison,* 194 Cal. 298 [228 Pac. 433] [street improvements]; *Allied Architects' Assn.* v. *Payne,* 192 Cal. 431 [221 Pac. 209, 30 A. L. R. 1029] [erection of memorial hall for war veterans]; *Veterans' Welfare Board* v. *Riley,* 188 Cal. 607 [206 Pac. 631] [transportation, tuition and living expenses for education of veterans]; *MacMillan Co.* v. *Clarke,* 184 Cal. 491 [194 Pac. 1030, 17 A. L. R. 288] [free school text books]; *Patrick* v. *Riley,* 209 Cal. 350 [287 Pac. 455] [payments for destruction of diseased cattle]; *Sacramento & San Joaquin Drainage Dist.* v. *Riley,* 199 Cal. 668 [251 Pac. 207] [flood control]; *San Francisco* v. *Collins,* 216 Cal. 187 [13 P. (2d) 912] [bond issue for relief of indigent sick and poor]; *The Housing Authority of Los Angeles* v. *Dockweiler,* 14 Cal. (2d) 437 [94 P. (2d) 794] [slum clearance]; *Goodall* v. *Brite,* 11 Cal. App. (2d) 540 [54 P. (2d) 510] [free treatment in county hospital only for those unable to pay]; and see notes in 9 Cal. L. Rev. 431, 18 Cal. L. Rev. 697.) Applying this rule it was recently decided that the act of the Legislature in releasing liens against the property of recipients of old age security benefits was reasonably justifiable as being for the general public welfare, although such releases were also a grant of aid pursuant to section 22 of article IV for the support of indigent aged. (*County of Alameda* v. *Janssen, supra.*) The courts will not disturb a legislative determination of what constitutes a public purpose so long as it has a reasonable basis. (*Nebbia* v. *New York,* 291 U. S. 502 [54 S. Ct. 505, 78 L. Ed. 940]; *Powell* v. *Pennsylvania,* 127 U. S. 678 [8 S. Ct. 992, 1257, 32 L. Ed. 253]; *Veterans' Welfare Board* v. *Riley, supra; Daggett* v. *Colgan,* 92 Cal. 53 [28 Pac. 51, 27 Am. St. Rep. 95, 14 L. R. A. 474].)

The care and relief of aged persons who are in need clearly may be a special matter of state concern in promoting public health and welfare, and, for the reasons stated, the Legislature in enacting the Old Age Security Law, based upon a broad social policy, has not made a gift of public money within the constitutional prohibition. It is therefore unneces-

sary to determine whether one who owns property not exceeding the amount specified by the Old Age Security Law, and who has refused the offer of a home with a relative responsible under the law for his support, is in indigent circumstances within the meaning of section 22 of article IV of the Constitution.

But even though the recipient of old age security benefits may be entitled to receive the benefits of the law, yet, the appellant contends, the county should have no right to reimbursement from a responsible relative when, before the aid was extended, the relative offered to support the recipient in his home. Section 2224 of the Welfare and Institutions Code is complete in itself, and gives a right of action to the county if the person receiving aid has within the state a spouse or adult child pecuniarily able to support him. Upon the direction of the designated authorities, recovery may be had of such portion of the aid advanced as the relative is able to pay. (*County of Lake* v. *Forbes,* 42 Cal. App. (2d) 744 [109 P. (2d) 972].)

The measure of responsibility, as fixed by this statute, is in terms of money. If, as contended by the appellant, the only way in which she could support her parents was in her home and not by pecuniary assistance, such fact would constitute an absolute defense to her liability under the statute. The intention of the Legislature in this regard is also shown by the 1941 amendment to section 2181 of the Welfare and Institutions Code, establishing a relative's maximum contribution scale based entirely upon the monetary income of the relative and the number of persons dependent on that income for support, and also providing the board of supervisors with discretion to accept less than the amount established by the scale in the event of unusual expenses. But there is no evidence of the appellant's inability to give her parents any financial assistance other than her own assertion to that effect, unsupported by any testimony as to how her relatively large income is spent. Under such circumstances, the trial court was clearly justified in finding that she is able to contribute to the financial support of her parents and to reimburse the county for the aid advanced to them.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., and Traynor, J., concurred.