[Civ. No. 3425.   Fourth Dist.   Nov. 20, 1946.]

MARY JANE NEWBOLD, Respondent, v. SOCIAL WEL-
FARE BOARD OF THE STATE OF CALIFORNIA
et al., Appellants.

Robert W. Kenny, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Appellants.

Sharpless Walker and James E. Walker for Respondent.

BARNARD, P. J.—In June, 1943, the petitioner, who had been receiving aid as a needy blind person, received a legacy consisting of cash and securities amounting to $2,653.65. It is conceded that the combined value of this legacy and her other personal property did not exceed $3,000. Based on this change in her circumstances the board of supervisors discontinued such aid to the petitioner on June 30, 1943. That action was affirmed by the State Social Welfare Board, that board finding that the petitioner possessed personal property amounting to $2,320; that since she owned more than $600 in cash and securities and had no plan for rehabilitation the discontinuance of such aid by the county was proper; that a regulation adopted by the State Social Welfare Board provides that aid to needy blind may not be granted where cash or securities owned are in excess of $600, unless there is a plan for and the ability to provide for rehabilitation; and that this regulation is not contrary to the provisions of the Welfare and Institutions Code.

The petitioner then filed an action in the superior court asking for a review of the entire proceedings and for the issuance of a writ of mandate compelling the respondent boards to admit her to the enjoyment of the rights to which she is entitled under division 5 of the Welfare and Institutions Code. The matter was submitted on the pleadings which disclose all the material facts, and a judgment and order were entered

directing the issuance of a peremptory writ of mandate requiring the respondent boards to admit the petitioner to the enjoyment of the rights to which she is entitled under division 5 of the Welfare and Institutions Code, and "to determine petitioner's right to blind aid from the 30th day of June, 1943, hence, disregarding for purposes of determining her eligibility the first $3000.00 in real and/or personal property which it is found that she has possessed since the 30th day of June, 1943." This appeal followed.

The appellants contend that the administration of aid to the needy blind under the provisions of chapter 1, part 1, division 5 of the Welfare and Institutions Code is based upon the need of the applicant, that the regulation adopted by the state board, to the effect that blind persons owning personal property in excess of $600 are not then in need, is a reasonable regulation, and that this regulation and the denial of aid to this respondent are not in conflict with the pertinent provisions of the Welfare and Institutions Code, but are in accordance with the purpose and intent of those provisions. On the other hand, the respondent contends that the regulation above referred to is in direct conflict with section 3047 of the Welfare and Institutions Code, which provides: "Aid shall not be received under the provisions of this chapter by any person who owns personal or real property, or both, the county assessed valuation of which, less all incumbrances thereon of record, is in excess of three thousand dollars." It is then argued that the plain meaning of this statute is that any blind person who owns not to exceed $3,000 in personal property is eligible for blind aid and cannot be excluded from the benefits of such aid insofar as any property qualification is concerned. In other words, it is contended that such a person is entitled to such aid regardless of any circumstances surrounding the possession or possible use of such funds, and that no discretion in this regard is left to the boards in charge of administering such aid.

We think this contention not only misconstrues the purpose and intent of section 3047 but ignores and leaves out of consideration the effect of other provisions of chapter 1 of division 5 of that code, covering the matter of aid to the needy blind. Section 3047, so far as material here, provides that aid shall not be received by any person who owns personal property with an assessed valuation in excess of $3,000. While this declares the ineligibility of those having property beyond this

limit, it neither expressly makes eligible one having property up to that amount, nor declares that the ownership of property up to that limit shall be disregarded in passing upon other necessary qualifications of such an applicant, including the basic one of his need for such aid. The amount thus fixed by section 3047, beyond which an applicant becomes ineligible for such aid, seems to have been intended as a maximum amount which the board, in exercising its discretion in view of other circumstances, may allow an applicant to retain in any case, and not a standard or fixed amount which an applicant must be allowed to retain in any event, regardless of other considerations.

Section 3047 should be interpreted in connection with and as a part of other provisions of the legislation providing for aid to the needy blind. This legislation was adopted for the purpose of operating in connection with the federal system of such aid, and with a view to obtaining federal assistance in providing such aid to needy blind persons. Section 1002 of title 10 of the federal Social Security Act provides: ''The state plan for aid to the blind must . . . provide that the state agency shall, in determining need, take into consideration any other income and resources of an individual claiming aid to the blind. . . .'' Section 103.6 of the Welfare and Institutions Code declares that aid to the needy blind is a matter of statewide concern and designates a state board as the agency to act with full power to supervise this form of assistance in order to secure full compliance with the provisions of title 10 of the federal Security Act. Section 3075 of this code authorizes the department of social welfare to make rules and regulations to carry out the provisions of this chapter which shall be binding upon the boards of supervisors of the various counties but which, however, may not conflict with the statutory provisions of this chapter. Other sections of this chapter provide for the investigation of applications, the taking of proof, and for an appeal to the state board from the decision of the county board of supervisors when any applicant is dissatisfied therewith. In making such investigations and decisions the boards of supervisors are bound, and in making rules and regulations the state board is bound, by other sections of this chapter, including 3005 and 3084.

Under the basic definition contained in section 3005 a person is not a needy blind person merely because his income

is not sufficient to support himself. It must also appear that he is unable to provide himself with the necessities of life. A very wealthy person, with his assets in the form of cash in a lock box, might have no income but it could not be said that he was unable to provide himself with the necessities of life. ■ And section 3084, in fixing the amount that shall be ordered to be paid, if the board of supervisors is satisfied that an applicant is entitled to aid, requires a consideration not only of the present income of the applicant but also, under some circumstances, of ''resources.'' While ''casual income and inconsequential resources'' are to be disregarded, the possession of other resources would necessarily call for some consideration. In applying these sections in a particular case a great variety of questions and problems will necessarily arise. Obviously, the character and kind of the property owned has an important bearing on the ability of the owner to provide for himself and on the actual need of an applicant, as referred to in section 3084. The ownership of a small house, for instance, not only has a bearing on the amount of aid that may be necessary, but it might well justify allowing the owner to retain it rather than having it considered as an asset enabling the applicant to provide for himself, especially under circumstances where this appeared to be for the benefit of all parties concerned. On the other hand, the possession of $3,000 in cash might well be taken as establishing the fact that the applicant is not unable to provide for himself while that situation prevails.

■ From a consideration of these other statutory provisions, with the variety of problems and various sets of circumstances which must be expected in dealing with a large number of applications for such aid, it seems to necessarily follow that the various boards charged with the duty of passing upon applications for aid have, and must have, the right to exercise a certain amount of discretion, and that they must take into consideration both the surrounding circumstances and the amount and character of property owned by an applicant, even though this be less than $3,000, in order to intelligently decide as to the eligibility of the applicant for such aid and the amount thereof that may be necessary in fairness both to him and to the public. That factual situation and the provisions of section 3075 justify and authorize the making of rules and regulations for the purpose of carrying out the provisions of this legislation. ■ While it may be conceded

that, in fairness to all, some amount of quick assets should be allowed to an applicant to cover emergencies, without too strict an application of the provisions with respect to his ability to presently provide for himself, the fixing of a maximum amount that may be thus allowed is properly one of those things which may be covered by rules and regulations adopted by the State Welfare Board. This has been done in the regulation in question, providing that in all cases an applicant may retain personal property up to the value of $600 without affecting his eligibility and right to receive such aid. There is nothing in the record before us to indicate that the existing regulation in this regard is unreasonable, arbitrary or capricious, and in view of the necessity and propriety of considering the provisions of this legislation as a whole, it cannot be said that this existing regulation is in conflict with the provisions of section 3047.

Clearly, it was intended that such applications for aid should be heard and determined on the facts and circumstances of each case; that a reasonable discretion should be exercised by the various boards charged with administering the act; and that the needs of the applicant, in view of his own circumstances, should be the controlling factor. While the language of the statutes is not as clear as might be desired we think it also sufficiently appears, from a consideration of this legislation in its entirety, that while it was intended to give the administering boards some leeway in individual cases, without a requirement that an applicant must use up his last dollar of assets before being considered unable to provide for himself, it was further intended by section 3047 to fix an outside limit upon the amount of assets which an applicant might be permitted to retain, and that it was not intended thereby to fix an amount which must be allowed to an applicant in all cases and without regard to the surrounding circumstances. We, therefore, hold that the respondent was not entitled, as a matter of right and in any event, to retain any assets she had up to the amount of $3,000, and that the trial court was in error in holding and adjudging that the appellants must, in determining the respondent's rights to such aid and in determining her eligibility therefor, disregard the first $3,000 in assets which it was found that she possessed.

The opinion herein expressed as to the validity of the questioned regulation adopted by the State Welfare Board is

confined to the facts here appearing, and nothing herein is intended as passing upon the validity of that regulation under other facts or circumstances, or in connection with other questions which might conceivably arise.

The judgment appealed from is reversed.

Marks, J., concurred.

A petition for a rehearing was denied December 17, 1946, and respondent's petition for a hearing by the Supreme Court was denied January 16, 1947.