[S. F. No. 19232.   In Bank.   Nov. 15, 1955.]

HARRIET JANE BERTCH et al., Appellants, v. SOCIAL WELFARE DEPARTMENT OF THE STATE OF CALIFORNIA, Respondent.

Howard B. Crittenden, Jr., for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

CARTER, J.—This is an appeal from a judgment of the superior court denying a petition for a writ of mandate to review an administrative order of the State Social Welfare Board.

Appellants, at all times here pertinent, have been and are members of a religious society named Christ's Church of the Golden Rule. The members of the church live together in a seminary or home owned by the church, located in the city and county of San Francisco, and share with each other everything they possess. In the petition it is alleged that they receive the necessities of life to the extent of an average of $17 per month from the religious society although the society is not obligated to so provide such necessities. Appellants were in residence at the seminary at the time they applied for old age security benefits which were denied. (One of the original petitioners left the church and is now receiving benefits under the Old Age Security Act.) Petitioners then applied for aid to the boards of supervisors of the various counties from which they came, under the procedure set forth in the Welfare and Institutions Code, and from the denials thereof, each petitioner filed an appeal with the Social Welfare Board (Welf. & Inst. Code, § 2181.1). The board appointed a referee to hear the appeals. A hearing was had at which petitioners were represented by counsel. The referee submitted his findings to the board; the board denied the appeals. Petitioners then filed a petition for a writ of mandate in the Superior Court of the City and County of San Francisco, seeking a review of the matter both as to the law and the facts.

The basic question involved on this appeal is whether or not petitioners are "needy" persons within the provisions of the Old Age Security Act. It is conceded that they all possess the age and residence qualifications set forth in section 2160 of the Welfare and Institutions Code. Before discussing the

question of the need of petitioners, however, several preliminary matters must be first disposed of.

Petitioners argue that certain findings of the hearing officer were changed by the board without notice to them or an opportunity for them to be heard. They point to no specific finding which was changed. Petitioners contend the procedure outlined in section 11517, subdivisions (b) and (c), of the Government Code, should have been followed; the board contends that the procedure set forth in sections 104.1, 104.2, 104.3 and 104.5 was the proper method. ██ Preliminarily, it should be noted that section 11501 of the Government Code provides: *"Extent to which procedure conducted pursuant to chapter: Agencies included.* (a) The procedure of any agency shall be conducted pursuant to the provisions of this chapter *only as to those functions to which this chapter is made applicable by the statutes relating to the particular agency."* (Emphasis in body of statute added.) As "included agencies" are set forth the Department of Social Welfare and the Social Welfare Board. It is our opinion that the board's contention that the section means it is to apply only when made applicable by the statutes relating to the particular agency involved is meritorious. In different sections of the Welfare and Institutions Code, the provisions of the Government Code are made directly applicable (see §§ 1624, 1625, 2304, 2305, 2355, 2356, all of which relate to permits or licenses or revocation thereof, or supervision of life-care contracts). It appears then that the board is correct in its contention that sections 104.1 et seq. of the Welfare and Institutions Code contain the controlling procedure.

Section 104.1 provides in part that any applicant or recipient for aid who is dissatisfied with the action of the county board of supervisors "shall . . . upon filing a petition with the State Department of Social Welfare, have the right of appeal and shall be accorded an opportunity for a fair hearing. The department shall set such appeal for hearing before the State Social Welfare Board and shall give all parties concerned written notice of the time and place of such hearing." The applicant is to appear in person either with or without counsel of his choice; the board is to consider the appeal and either dismiss it or award aid in compliance with the terms of the code. Section 104.2 provides that if such an applicant feels aggrieved by any decision of the board, he may petition the superior court of the county of his residence for a "review of the entire proceedings in

the matter, *upon questions of law involved in the case.* Such review, if granted, is a distinct and cumulative remedy. The State Social Welfare Board shall be the sole respondent in such proceedings.'' (Emphasis added.) Section 104.5, subdivision (c), provides: ''*[Referee's report: Final Decision.]* If an appeal, hearing, or rehearing is not heard by the board, a report of the proceedings shall be prepared by the referee conducting it and the report, together with any data the party appealing may desire, shall be presented to the board for final decision. Only the board may make such final decision.''

Under section 11517, subdivisions (b) and (c), of the Government Code, if the proposed decision of the hearing officer is not adopted by the agency, ''The agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same or another hearing officer to take additional evidence. . . . The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. If additional oral evidence is introduced before the agency itself no agency member may vote unless he heard the additional oral evidence.''

Petitioners contend that ''unless he who hears decides'' (*Morgan* v. *United States,* 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288]) there has been a denial of due process of law. In *Leeds* v. *Gray,* 109 Cal.App.2d 874 [242 P.2d 48], the petitioner was a referee of the Unemployment Insurance Appeals Board; charges were preferred against him. He had a hearing before a hearing officer at which no board member was present. The hearing officer made no findings, no decision or recommendation. The Personnel Board reviewed the transcript of the proceedings and made certain findings, after which he was ordered demoted. The court there said in holding there had been no denial of due process: ''Petitioner, of course, was entitled to a fair and full hearing. The fact that a fact finding tribunal does not see or hear the witnesses does not in every instance constitute a denial of such hearing. For example, many court proceedings are determined upon affidavits. There the court neither sees nor hears the witnesses. A fair and full hearing is given where the fact finder fully reviews the record and an opportunity is given the parties to argue their contentions as to the credibility of the witnesses and the other matters involved in the proceeding. This was done in our case by briefs. It is true that

no proposed findings or decision were submitted to the parties and no opportunity given to argue concerning them, but where the board itself is passing on the record, fully considers it and the arguments presented, on the merits, there is no requirement that the board permit further argument on its proposed findings and decision, and no logical reason therefor.'' (Pp. 883, 884.) (See *California Shipbuilding Corp.* v. *Industrial Acc. Com.,* 27 Cal.2d 536 [165 P.2d 669]; *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R.2d 593].) ■ It would appear that under the situation here present where petitioners were given a full opportunity to be heard before the hearing officer whose report was then reviewed by the board, there was no denial of procedural due process of law.

Petitioners next argue that they should have been given a trial de novo in the superior court. In other words, it is contended that the trial court should have based its decision on the facts as well as the law. Petitioners rely upon *Laisne* v. *California State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457], and *Drummey* v. *State Board of Funeral Directors & Embalmers,* 13 Cal.2d 75 [87 P.2d 848], for the proposition that in reviewing an order of a statewide administrative agency, the superior court must exercise its independent judgment on the law and the facts where constitutional rights are involved. The Drummey and Laisne cases stand for the rule that an ''existing valuable privilege'' may not be taken away by an administrative order without giving the person so deprived the opportunity of having the finality of such action passed upon by a court of law (13 Cal.2d 75, 84). ■ Petitioners here were not possessed of a vested right, but the right to make application for old age benefits provided that they were able to comply with the statutory prerequisites therefor (Welf. & Inst. Code, § 2160 et seq.) It would appear, therefore, that petitioners were not entitled to a trial de novo in the superior court.

Petitioners' major contention is that they are deprived of old age benefits by reason of their membership in Christ's Church of the Golden Rule and that such deprivation is a denial of freedom of religion and a denial of equal protection of the laws within the meaning of both the federal and state Constitutions.

The Social Welfare Board found that when petitioners joined the church they gave up all their worldly possessions to promote its objects; that they have performed duties im-

posed upon them as such members, and that petitioners received "full, complete, and adequate support from said" church; and "That to the extent that any of the appellants were in need within the meaning of the Old Age Security Law, they were so as a result of a continuing voluntary acceptance of lower standards of living in accordance with their adherence to the precepts of Christ's Church of the Golden Rule and their entrance into 'the religious apostolic society form of living.'" Finding VI is "That all or a major portion of any grant of Old Age Security made to the appellants would not be devoted to meeting their individual and personal needs as those needs are defined by the Welfare and Institutions Code and the Manual of Policies and Procedures of the State Department of Social Welfare, but would, on the contrary, be devoted systematically and continuously to the advancement of the objectives of Christ's Church of the Golden Rule." Finding VII is "That none of the appellants is or since January 20, 1948, has been under any so-called 'life care' contract whereby gifts or transfer of property were made to be used for the support, maintenance, or care of the donor thereof."

We said in *County of Los Angeles* v. *La Fuente*, 20 Cal.2d 870, 875 [129 P.2d 378], that the "'need' of the applicant necessary to qualify for the benefits of the law is defined by the Legislature to be the absence of actual receipt of support by the applicant from responsible relatives and by the property limitations of the law." Let us then look to see how the law defines "need."

Section 2160, subdivisions (a), (b), (c), sets forth the age and citizenship and residence requirements which are not here involved or questioned. Section 2160 (e) provides in part: "Persons who are inmates of a boarding home or other institution not supported in whole or in part by public funds shall be granted aid but no such aid shall be granted if such persons are cared for under a contract for a period of time exceeding one month; . . ." Subsection (f) provides that aid shall be granted to such an aged person "Who is not receiving adequate support from a husband or wife, or child able and responsible under the laws of this State to furnish such support; free board and lodging supplied to an applicant, because of his necessity, by a friend or relative who is not responsible for his support, shall not be grounds for refusing aid"; subsection (g) provides that aid shall be granted to such an aged person "Who has not made any voluntary

assignment or transfer of property *for the purpose of qualify-ing for such aid."* (Emphasis added.) Section 2160.5 pro-vides: "Notwithstanding any provision of subdivision (e) of Section 2160 to the contrary, aid shall be granted to any person who is an inmate of a home or institution maintained by any fraternal, benevolent, or other nonprofit organization if the organization has not been paid for the life care and maintenance of the person through assessment of or dues of said inmate or otherwise, whether or not the person has agreed or promised to pay for his maintenance in the event that he receives any pension, bequest, devise, or other inheritance.

"The county from which such inmate came to such home shall, for the purposes of this section, be considered the resi-dence of such inmate to grant such aid."

Sections 2163 et seq. set forth the amount of personal prop-erty which may be owned by persons otherwise eligible for aid and the valuation of real property which if owned would render such persons ineligible for aid. Section 2010 provides that "No question, inquiry, or recommendation under the authority of this chapter or the rules of the State Department of Social Welfare shall relate to the political or religious opinions or affiliations of any person, and no grant or denial of aid under this chapter shall be in any manner affected or influenced by such opinions or affiliations." A specific finding was made to the effect that this section had not been violated by county or state officials.

Section 2020 provides that "The amount of aid to which any applicant shall be entitled shall be, when added to the income (including the value of currently used resources, but excepting casual income and inconsequential resources) of the applicant from all other sources, seventy-five dollars ($75) per month. If, however, in any case it is found the actual need of an applicant exceeds seventy-five dollars ($75) per month, such applicant shall be entitled to receive aid in an amount, not to exceed seventy-five dollars ($75) per month, which when added to his income (including the value of currently used resources, but excepting casual income and inconsequential resources) from all other sources, shall equal his actual need."

There is no finding that petitioners made any voluntary assignment or transfer of property for the purpose of qualify-ing for old age assistance (Welf. & Inst. Code, § 2160, subd. (g)); there is no finding that petitioners are disqualified by reason of owning either personal or real property in excess

of the statutory valuations. The finding that petitioners are receiving *full, complete and adequate support from their church (if material)* must be examined in the light of the record which shows that they each receive from $16 to $18 per month in food, clothing and medicine. This is not denied by the board. ■ The finding that any grant of old age security benefits would not be devoted to the personal needs of the applicants but to the work of the church *(if material)* does not appear to be supported by the record: many testified that they needed clothing, or medicine, or proper food, or special diets, or dentures, hearing aids, etc. which they were not receiving from the church. We find nothing in the record, nor does the board point to any provision in the Welfare and Institutions Code which places any limitation on the use for which, or to which, money received under the act must be put. As a matter of fact, the board's Manual of Policies and Procedures, section A 140, provides: "No provision of the O. A. S. Law requires or purports to require that income received by any person, whether a recipient of aid or one who has been a recipient of aid, shall be expended by that person for particular purposes or in particular amounts." ■ If the applicants are otherwise qualified for benefits under the act, it would appear completely immaterial and irrelevant for what the money is spent. If they choose to turn it over to a religious institution in return for which they receive care at a lower level than if all the money were spent for food, clothing and the like, is the board to place a monetary value on the satisfaction such applicants may receive in having their spiritual needs fulfilled? If an applicant receives $75 per month and gives $50 of it each month to the Catholic or any Protestant church, is the aid to cease because considered unnecessary? We would think not.

■ Petitioners are under no contract for life care with the Church of the Golden Rule; they are free to leave the church whenever they desire. The seminary in which they live is not supported in whole or in part with public funds. It appears to us that as a matter of law, petitioners come directly within the provisions of section 2160.5 which provides that aid shall be granted to any person who is an inmate of a home or institution maintained by any benevolent "or other nonprofit organization if the organization has not been paid for the life care and maintenance of the person through assessment of or dues of said inmate or otherwise, whether

or not the person has agreed or promised to pay for his maintenance in the event that he receives any pension, bequest, devise, or other inheritance.'' In addition, they are not receiving assistance from any legally responsible relative (Welf. & Inst. Code, § 2160, subd. (f)).

The board makes much of the fact that when the church corporation was organized in 1944 as a nonprofit organization, all members turned over all their property to the corporation which purchased various business organizations therewith in which all members able to work were required to do so. This corporation went through bankruptcy in 1945. In 1946, some of the original members, including petitioners, organized a ''nonincorporated association'' and had released to themselves certain of the commercial projects which had been operated by the bankrupt corporation. ██ It is apparently the board's position that the income from the various enterprises is sufficient to support, adequately, the petitioners. A complete answer to this contention is that whether or not $16 or $18 per month is adequate support, *the church is not obligated to provide it.* The code (Welf. & Inst. Code, § 2160, subd. (e)) provides that ''Aid shall be granted under this chapter to any person . . . (f) Who is not receiving adequate support from a *husband* or *wife*, or *child* able and responsible under the laws of this State to furnish such support; *free board and lodging supplied to an applicant, because of his necessity, by a friend or relative who is not responsible for his support, shall not be ground for refusing aid.*'' (Emphasis added.) ██ As we said in the La Fuente case (20 Cal.2d 870, 875) ''. . . the 'need' of the applicant necessary to qualify for the benefits of the law is defined by the Legislature to be the absence of actual receipt of support by the applicant from responsible relatives and by the property limitations of the law.'' ██ We also said (p. 876) ''Both the letter and the spirit of the Old Age Security Law clearly show that only the receipt of support from responsible relatives should render the applicant ineligible for benefits under it.''

██ The board argues that if old age benefits are paid to these petitioners it would be, in fact, a grant of aid to a religious sect and unconstitutional as a gift of public funds. We held in *County of Los Angeles* v. *La Fuente, supra*, 20 Cal.2d 870, 876, 877, that the care and relief of aged persons who are in need is a special matter of state concern and that the enactment of the Old Age Security Law, based upon

a broad social policy, did not constitute a gift of public money within the constitutional prohibition. .

The board argues that the question of "need" is one of fact for the board and cites *Newbold* v. *Social Welfare Board,* 76 Cal.App.2d 844 [174 P.2d 482], and *Kelley* v. *State Board of Social Welfare,* 82 Cal.App.2d 627 [186 P.2d 429], in support of the statement. With this statement there can be no argument. However, the Legislature has seen fit to set the standard of need and the board must act in accordance with the statutory definition. We have heretofore discussed the statutory requirements to be met by persons applying for old age assistance and it appears to us that petitioners, so far as can be ascertained, meet those requirements.

It is our opinion that the findings that petitioners are receiving adequate support from Christ's Church of the Golden Rule and that they are in need because of their "voluntary acceptance of the lower standards of living" prescribed by the church, as well as the finding that all, or a major portion, of any aid received would be devoted to the church are immaterial when considered in the light of the applicable statutes as heretofore set forth and discussed.

The judgment is reversed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—The majority opinion concedes, as it must, that "the question of 'need' is one of fact for the board [Social Welfare]" but avoids the board's finding by holding that "the Legislature has seen fit to set the standard of need" and that petitioners as a matter of law come within the prescribed standard. Certainly I agree that the Legislature has, within limits, set the standard, but in respect to the fact question as to whether the petitioners, upon the record, *as a matter of law* fall within that standard, I agree with the Social Welfare Board and with the superior court rather than with the majority. In my view the majority opinion unduly extends the concept of "need" which is basic to the philosophy and required by the letter of the statutes governing the granting of old age security. The opinion relies, among other things, upon isolated statements from *County of Los Angeles* v. *La Fuente* (1942), 20 Cal.2d 870 [129 P.2d 378], a case which dealt with a situation materially different from that presented here, and which is hereinafter discussed.

The law which provides for the payment of aid by the state to the aged has since its inception been based upon the concept of need. It was provided by Stats. 1929, ch. 530, p. 914, § 1, as it is now provided by section 2001 of the Welfare and Institutions Code, that residents of the state are entitled to aid in old age "if in need." The petitioners here, according to the findings of the State Social Welfare Board, and of the superior court, are not in need. In accord with their beliefs they have transferred all their property to Christ's Church of the Golden Rule. They all perform tasks, according to their abilities, at the theological seminary. In accord with the canon law of the church, "As the material needs of the various persons and their families and dependents must of necessity be met to permit these persons to dedicate their work, services, and studies to carry out the religious purposes of the ecclesiastical society, the religious apostolic society form of living is selected as the means to accomplish these results . . ." and "The ecclesiastical Church Government shall determine how much is necessary for the common community treasury to carry out the religious purposes through the apostolic society form of living." The petitioners subscribe to these tenets.

The board has further found that petitioners "are now receiving, full, complete, and adequate support including incidental expenses from said Christ's Church of the Golden Rule, of which they are members, through the Elected Delegates Committee, a temporal agency of said Christ's Church of the Golden Rule in accordance with their needs as they and the said Christ's Church determined them to exist"; "That to the extent that any of the appellants were in need within the meaning of the Old Age Security Law, they were so as a result of a continuing voluntary acceptance of lower standards of living in accordance with their adherence to the precepts of Christ's Church of the Golden Rule and their entrance into 'the religious apostolic society form of living' "; and "That all or a major portion of any grant of Old Age Security made to the appellants would not be devoted to meeting their individual and personal needs as those needs are defined by the Welfare and Institutions Code and the Manual of Policies and Procedures of the State Department of Social Welfare, but would, on the contrary, be devoted systematically and continuously to the advancement of the objectives of Christ's Church of the Golden Rule."

It thus appears that although petitioners do not have en-

forceable, temporal contracts for receipt of their material needs, they do in fact, in accord with the canon law, which they continue to espouse, receive such needs.

In *County of Los Angeles* v. *La Fuente* (1942), *supra,* 20 Cal.2d 870, this court affirmed a judgment for plaintiff county for reimbursement for old age benefits furnished to the parents of defendant. It was shown that defendant was financially able to contribute to the support of her parents. The parents had refused the child's offer to support them in her home. It was held (p. 875 of 20 Cal.2d) that this refusal of support in the home did not render the parents ineligible for old age assistance.

In the La Fuente case it is said (as stated at [*ante,* p. 533] of the majority opinion) that "the *'need'* of the applicant necessary to qualify for the benefits of the law is defined by the Legislature to be the absence of actual receipt of support by the applicant from responsible relatives [those who, according to law, owe a duty of support] and by the property limitations of the law" (p. 875 of 20 Cal.2d). But this statement should be considered in the context in which it was made; i.e., in a case where this court was considering, in effect, whether aged parents should be deprived of old age assistance because they preferred to maintain their own home with such aid rather than to be forced to accept the offer of an inharmonious residence with their child. If the quoted statement from the La Fuente case is read literally out of context, then every aged person in the state who has no relatives liable for his support, and whose property is less than that stated in sections 2163 and 2164 of the Welfare and Institutions Code, is entitled to old age assistance regardless of his income. Such is not the law. (See Welf. & Inst. Code, § 2020: "The amount of aid to which any applicant shall be entitled shall be, when added to the income (including the value of currently used resources, but excepting casual income and inconsequential resources) of the applicant from all other sources, eighty-five dollars ($85) per month. If, however, in any case it is found the actual need of an applicant exceeds eighty-five dollars ($85) per month, such applicant shall be entitled to receive aid in an amount, not to exceed eighty-five dollars ($85) per month, which when added to his income (including the value of currently used resources, but excepting casual income and inconsequential resources) from all other sources, shall equal his actual need.") Thus "actual need" and "income . . . from all other sources" are

elements integral to the legislative plan; being integral to the plan, it seems essential that the agency charged with its administration shall have power within the scope of the plan to make the practical factual determinations incidental to its application.

Some argument has been advanced to the effect that petitioners are being deprived of a right to dispose of their state aid as they may see fit. There is no such holding either by the administrative agency or the superior court. The argument begs the question by assuming that petitioners are entitled as a matter of law to receive the aid. Until and unless they become entitled to receive it, they should not be heard to argue a right to dispose of it. We therefore need not consider an opposing argument suggesting the profits which might be garnered by a smooth-talking promoter who under the guise of religious, political or social theme could sell old persons on a plan of contributing $85 a month to the ''Master,'' together with such personal services as they were able to render, all for a roof and keep on frugal scale.

These petitioners have elected to live modestly in their communal, religious fashion; they are enjoying the material, social and spiritual compensations which they find therein. In my view, the finding of the board, in substance, made on substantial evidence, that they have voluntarily accepted such a standard and circumstances of living as fulfilling their needs, and hence are not persons in need, is not, as held in the majority opinion [*ante*, p. 534] immaterial, but is vital and determinative. I would affirm the judgment.

Shenk, J., concurred.

Respondent's petition for a rehearing was denied December 14, 1955. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.