[Civ. No. 19029. First Dist., Div. One. July 17, 1961.]

ELMER T. COX, Respondent, v. STATE SOCIAL
WELFARE BOARD, Appellant.

710

Stanley Mosk, Attorney General, Elizabeth Palmer and Leonard M. Sperry, Jr., Deputy Attorneys General, for Appellant.

Dallas D. Brock for Respondent.

TOBRINER, J.—Does a State Social Welfare Board regulation that requires the applicant for state old age security benefits to exhaust potential resources in the form of his wife's present right to apply for federal benefits at the age of 62, instead of waiting until she reaches the age of 65, exceed legislative authorization, violate the Fourteenth Amendment and contravene an alleged previous contrary judgment of the superior court? The trial court answered these questions in the affirmative. We shall set forth the reasons which, we believe, compel the opposite result.

The proposed decision of the State Social Welfare Board, which was later adopted, describes the factual background of the case. The decision initially outlines the history of the previous litigation which respondent claims forecloses the present case.

The decision states that respondent had "been receiving Old Age Security continuously . . . since August 1, 1949, except for a three-month period of hospitalization in 1952." The county had "computed . . . [his] Old Age Security [OAS] grant on the basis of allocation of one half of his $69.90 Old Age and Survivors Insurance [OASI] benefit to his ineligible spouse and allocation of the remaining half to his own budget." In October 1954, the county determined that respondent's spouse "was in possession of separate personal property in excess of $6,120 . . . and . . . could not be considered a 'needy' person"; the county, therefore, reduced respondent's OAS grant. Respondent appealed to the State Social Welfare Board; the board affirmed the county's decision. Respondent then petitioned the Superior Court of the City and County of San Francisco for a review of the board's decision. The court rendered judgment for respondent, ordering the board to " 'restore . . . [respondent] to monthly aid under . . . [OAS] based upon allocation of one half of the benefits received by . . . [respondent] under the . . . [OASI] to . . . [respondent] and one half to . . . [his] wife, and that payment be made retroactive to November 1, 1954.' " The board complied with the court's order; respondent received his grant through November 1956.

The decision then proceeds to set out the basis of the present case. In November 1956, the month after respondent's spouse attained her 62d birthday, the county informed him and his wife that "Federal Public Law No. 880 [effective November 1, 1956] amended the Social Security Act reducing to 62 the age at which . . . [OASI] benefits may be paid to certain women" and that the "State Social Welfare Board has adopted a policy [regulation A-212.53], consistent with federal regulations, which requires that all income, including a secondary . . . [OASI] benefit to which a spouse may be entitled, must be considered in determining the grant of assistance."[1] Respondent's wife did not exercise her option and the county determined that "under regulations [A-212.53] and for purposes of computing the assistance grant, allocation of a portion of the . . . [respondent's] benefit to his spouse might not continue. . . ."

According to the decision, "all parties" at the hearing before the board agreed that the county had "correctly applied" regulation A-212.53 and that since OASI "benefits payable to a woman at age 62 are somewhat lower than those payable beginning at age 65," application of the rule had the effect of either " [d]epriving the . . . spouse of any portion of . . . [respondent's] primary . . . [OASI] benefit if she fails to make application" at 62, or "[i]f she applies at 62, reducing the total amount of . . . benefits (but only in the event she continues to receive benefits beyond her 77th birthday)." Respondent, however, objected to the rule upon the basis of its legality and constitutionality. Sustaining the regulation, the board held that it was "required in order to maintain compliance with federal requirements" and that the county's action did not contravene the previous court order of 1956

[1]Regulation A-212.53 provides in part as follows:

"*When each of a couple is receiving a* [Federal Social Security] *benefit*, such benefit is to be considered the separate income of each. Regulations on allocation of separate income then govern. *Exception*—When the benefit received by the wife is less than one-half that received by the husband and her needs are not otherwise met, the husband may allocate to her: (1) that amount necessary to meet her needs; or (2) an amount which, when added to her benefit, will equal one-half of his benefit; whichever is less.

"*When the recipient is receiving a benefit and the spouse is ineligible for a benefit*, up to one-half of such income may be allocated to the spouse if his needs are not otherwise met. If the spouse becomes eligible for a benefit and files his claim promptly, the allocation may continue until he receives his award. After the spouse receives his award, allocation may continue only as provided above when both of a couple are receiving benefits. If the spouse refuses to file a claim, the allocation may not continue after the month in which such spouse became eligible."

because the county "based its December 1956 determination" on "new circumstances not covered by the order of the court."

Respondent subsequently brought this action for a review of the board's determination, charging that regulation A-212.53 conflicted with the Constitution and the prior court decision. The record of the proceedings before the board composed the only evidence adduced to the trial court. Rendering judgment for respondent, the court concluded that "Section A-212.53 of the Manuel of Policies and Procedures of the State Social Welfare Board of the State of California is unconstitutional as being arbitrary, oppressive, burdensome and unjust" and therefore violative of the due process clause of the Fourteenth Amendment; that "promulgation of Section A-212.53 . . . was an act in excess of the authority delegated to said Board by the legislature and . . . therefore invalid"; that the board's action in adopting the section was "contrary to the judgment of the Superior Court" recorded in 1956 and "therefore invalid as to . . . [respondent]." The court ordered the board, acting through the City and County of San Francisco, to restore respondent to monthly aid in the origial amounts and also to make payments retroactive to December 1, 1956.

While respondent concedes that state law compels compliance with federal requirements, he questions, first, whether "the contents of the rule" were "necessary to meet Federal Requirements," and, second, whether the board "rather than the Legislature itself, was the proper and authorized body to pass such a rule. . . ." We do not doubt that the regulation was "necessary to meet Federal Requirements" and that the board was the proper authority to adopt it.

Turning, first, to the issue as to the federal requirements, we note preliminarily the basic design of the state old age security program. To meet the individual's requirements, the state old age security program computes its schedules by fixing a figure for the applicant's total need, in accordance with the statutory definition, and subtracting from that figure his income. The difference represents his unmet need, which can be satisfied within the limits of a maximum monthly ceiling. The regulations define, as income, potential sources of income, and within this category, federal old age and survivors insurance benefits. (Social Welfare Board Regulations A-211,212.) This state program, as respondent recognizes, must "at all times conform to the requirements of Federal law for the continued receipt of Federal grants-in-aid." (Welf. & Inst. Code, § 119.5.)

714

The federal program, like that of the state, requires the utilization by the applicant of all potential resources; the federal statute insists that the state in determining·need consider "other income and resources." We shall point out that since a wife's OASI benefits have been ruled to be resources when the wife is an "essential person" to the applicant, the involved state regulation is requisite for compliance with the federal law.

The federal social security act contemplates grants to the states "[f]or the purpose of enabling each State to furnish financial assistance . . . to aged needy individuals. . . ." (42 U.S.C., § 301.) To be eligible for federal funds a state plan for old age assistance must, among other requirements, "provide that the State agency shall, in determining need, take into consideration any other income and resources of an individual claiming old-age assistance," (42 U.S.C., § 302, subd. (a)) and "failure to comply substantially with any provision required by section 302(a)," including failure to take into consideration other income or resources, will result in the cessation of payments by the federal government until the failure is eliminated. (42 U.S.C., § 304, subd. 2.)[2]

 A specific federal regulation provides that the act does not afford to an applicant the right to the fulfillment of his needs from the federal program by reason of refusal of acceptance of available resources. Adopted subsequent to the board regulation, the federal regulation discusses the effect of the 1956 amendments to the social security act "permitting a wife of an OASI beneficiary . . . the option of applying for a reduced benefit between ages 62 and 65. . . ." (§ 3140, subd. (5) of the Handbook.) The regulation states: "The fact that it is optional for certain women under age 65 to establish OASI entitlement at reduced benefit rates does not provide a basis for an interpretation that their eligibility for such reduced benefits need not be considered in determining their available resources. . . . The Federal Act . . . does not give any individual a right to have his needs met out of an assistance program because of his refusal to accept any resource that is available to him upon application. . . . Furthermore, whether the woman concerned is herself an applicant or recipient of assistance or is considered an essential person to an applicant

[2]Federal regulations have also been adopted which stress that "all income and resources" of the individual must be considered "in determining that he is needy." (Section 3131 of part IV of the Federal Handbook of Public Assistance Administration.)

or recipient, there is no legal basis for interpreting the income and resources provision as allowing the State plan to permit her to conserve her resources by failure to file a claim for her OASI benefits.''

Thus the federal regulation specifies that if a wife is an applicant, or is eligible for OASI benefits, and is an ''essential person'' to a recipient, she must claim her OASI benefits. These benefits compose other ''resources.''

It is true that the term ''essential person'' has not been defined. Respondent claims that ''[t]he applicant's benefit is determined by ascertaining his need,'' including ''a consideration of his separate income, property and resources.'' Respondent argues '' [t]he only way the wife . . . becomes involved . . . is when'' there is a ''question of whether allocation of a portion of her husband's *primary* social security benefit can be made to his spouse to reduce the amount of his comput*i*ble income.'' (Emphasis added.) Appellant answers that ''the very allocation urged by respondent and permitted by the board demonstrates that her needs are of sufficient concern to *respondent* as to warrant *not* a *separate* state grant to her . . . but rather an augmented grant *to him*. . . . [I]f his wife is not an 'essential person' to him, he should not be entitled to augment his grant on her account.'' We find this point conclusive: So long as respondent obtains increased benefits as a result of his obligations toward his wife she must realistically be an ''essential person'' within the meaning of the federal regulation.

California statutory and case law posits compliance with federal law in order to prevent discontinuance of federal aid in the OAS program. Sections 103.5, 119.5, and 2020.05 of the Welfare and Institutions Code specifically require conformity to federal law. Indeed, in *Pearson* v. *State Social Welfare Board* (1960), 54 Cal.2d 184 [5 Cal.Rptr. 553, 353 P.2d 33], the Supreme Court recently stated: ''The public purpose expressed by both the federal Social Security Act and the California Old Age Security Law (see Welf. & Inst. Code, § 2000) . . . is to render public assistance to people *in need*. The California acts were adopted or amended for the purpose of operating in harmony with the federal system with a view to obtaining federal assistance in providing such aid to needy persons. . . . (*Newbold* v. *Social Welfare Board, supra,* 76 Cal.App.2d 844, 847 [174 P.2d 482].)'' (Pp. 213-214.)

■ Respondent's argument that OASI benefits constitute community property, and that he therefore may allocate one half of such benefits to his wife as a matter of law, confuses the allocation of the benefits with its characterization as community or separate property. In allocating benefits the state determines the need of the one spouse as related to the joint resources of both spouses; it does not fix property rights or designate the income as community or separate property. As is stated in *Kelley* v. *State Board of Social Welfare* (1950), 99 Cal.App.2d 865 [222 P.2d 925] : "There is no denying that spouses may by agreement convert community earnings into separate property so far as they are personally concerned but such agreements are not binding upon respondent in proceedings for determining the amount of aid to be awarded an applicant." (P. 868.) (See Jacobus tenBroek, *The Impact of Welfare Law Upon Family Law,* 42 Cal.L.Rev. (1954), p. 458.)

■ In view of the federal statute requiring a state to consider "other income and resources" in determining need, and the subsequent federal ruling that a wife's OASI benefits constitute "resources" in the circumstance that his wife is an "essential person" to an applicant, the regulation is no more than a necessary condition to compliance with federal law.

We turn to respondent's second point: his assertion that the trial court properly concluded that "promulgation of Section A-212.53 by the . . . Board . . . was an act in excess of the authority delegated to said Board by the legislature. . . ." We shall explain why the board possessed the authority to adopt the regulation in execution of the purposes of the state legislation.

Section 103 of the Welfare and Institutions Code gives the Social Welfare Board the power and the duty "to adopt repeal and amend *such* rules and regulations *which are* consistent with law and *reasonably necessary* for the administration of welfare." Section 103.1 further states that such rules and regulations "are adopted to implement, interpret, or make specific the law enforced by the department [Department of Social Welfare]. . . ." Section 2140 authorizes the board to administer the old age security law. ■ These sections clearly endow the board with the power to adopt regulations requisite to compliance with federal law. ■ As stated in *Pearson* v. *State Social Welfare Board, supra,* 54 Cal. 2d 184 : "Under both the federal and state acts administrative boards are empowered to promulgate rules, regulations and

administrative interpretations. These regulations should be harmonized wherever possible, within the statutory limits established, in order to carry out the cooperative public purpose and law of both sovereigns.'' (P. 215.)

 Respondent's characterization of the regulation as ''substantive'' rather than procedural, and therefore violative of Welfare and Institutions Code section 2140 presents a formal, rather than meaningful, criticism. Eschewing such legalistic dichotomy, the Supreme Court has upheld other regulations no less effective than the present one. In *People* v. *Shirley* (1961), 55 Cal.2d 521 [11 Cal.Rptr. 537, 360 P.2d 33], that court recently sustained a board regulation that the income of a ''man living in the home assuming the role of spouse'' (p. 524) of the mother of the needy children must be evaluated in determining such need, although section 1508 of the Welfare and Institutions Code purported to designate only a stepfather liable for support of needy stepchildren. And in the *Pearson* case the court upheld regulations requiring the sale of real property to meet the general requirement that the property be ''utilized'' (p. 215) before the owners would be considered eligible for aid. In the instant case, the board, confronted by a situation not expressly resolved by statute, has determined that available resources should be treated as income. Its ruling can no more be shattered upon the contrived basis that it is ''substantive'' than those sustained in the cited cases.

As appellant states, the involved regulation is a small part of the legal mechanism designed by the Legislature and the Social Welfare Board to assure the continuation of federal grants-in-aid to the state that each year approximate no less than $140 million. (Public Welfare in Calif., Annual Summary of Statistical and Fiscal Data, 1958-1959, State of Calif., Dept. of Social Welfare, Statistical Series Document No. AR-1-1, p. 44.) We should not disturb the fine balance between the intermeshing state and federal systems unless the showing is clear and compelling. Such a showing has certainly not been presented here.

We turn to respondent's contention, adopted by the trial court, that the regulation violates the Fourteenth Amendment of the United States Constitution. The proposition rests upon the two subsidiary points that the rule contravenes the due process and the privileges and immunities clauses. Neither argument stands analysis.

■ Violation of due process contemplates the destruction of basic rights. Thus the United States Supreme Court in *American Land Co.* v. *Zeiss* (1911), 219 U. S. 47, 66 [31 S.Ct. 200, 55 L.Ed. 82], states the axiomatic proposition that the due process provisions "only restrain those arbitrary and unreasonable exertions of power which are not really within lawful state power, since they are so unreasonable and unjust as to impair or destroy fundamental rights."

■ No such fundamental right inheres in the recipient's participation in old age assistance. The cases unanimously declare that the beneficiary possesses no "vested right" to such aid. (Welf. & Inst. Code, § 2002; *Bertch* v. *Social Welfare Dept.* (1955), 45 Cal.2d 524, 529 [289 P.2d 485]; *Kelley* v. *State Board of Social Welfare* (1947), 82 Cal.App.2d 627, 632 [186 P.2d 429].) His only "right" is "to make application for old age benefits provided that . . . [he can] comply with the statutory prerequisites therefor. . . ." (*Bertch* v. *Social Welfare Dept., supra,* 45 Cal.2d 524, 529.) The Legislature specifically reserves the power to amend or repeal the provisions granting old age assistance (Welf. & Inst. Code, § 2002); this reservation necessarily encompasses the right to specify the conditions for the grant. Hence, if the board acts within the authority granted it by the Legislature, as we have held *supra,* the regulation clearly does not impair a fundamental right guaranteed by the due process clause of the Fourteenth Amendment.

■ Nor does the questioned rule postulate an "arbitrary" or "unreasonable exertion of power." Surely it is "reasonable" for the state to require that, as a qualification for assistance, the needy applicant exhaust his potential resources. Indeed, the statutory condition that the state comply with the federal rules, which we have discussed *supra,* reinforces the reasonableness of the requirement. The language of *Newbold* v. *Social Welfare Board* (1946), 76 Cal.App.2d 844 [174 P.2d 482], dealing with a comparable regulation, applies here: "There is nothing in the record before us to indicate that the existing regulation . . . is unreasonable, arbitrary or capricious. . . ." (P. 849.)

■ The argument as to the privileges and immunities clause discloses an equal lack of merit. That clause protects only privileges "which owe their existence to the Federal Government, its National character, its Constitution, or its laws." (*Slaughterhouse Cases* (1872), 16 Wall. (U.S.) 36, 79 [21 L.Ed. 394]; *Twining* v. *New Jersey* (1908), 211 U.S. 78,

97 [29 S.Ct. 14, 53 L.Ed. 97]; *Madden* v. *Kentucky* (1940), 309 U.S. 83, 90-91 [60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383].) The OAS grants are issued under state law. Federal financial aid supplements the program; it does not create it. The federal law does not require the state to provide such a program for its needy aged; the federal government, upon the state's compliance with federal standards and requirements, assists the state program. Rule A-212.53, a state regulation controlling state grants, clearly does not fall within the privileges and immunities clause.

Finally, we address ourselves to respondent's argument that the board's action in adopting regulation A-212.53 contravened the previous judgment of June 11, 1956, between the parties and therefore could not affect respondent. We have concluded that the changes in fact and law between the filing of the 1956 judgment, and the county's redetermination of respondent's OAS grants, prevent the application of the doctrine of res judicata to the instant case.

The court rendered and recorded the previous judgment, holding that respondent's wife's ownership of separate property did not affect his right to allocate to her one half of his OASI benefits, on June 11, 1956. Following that decision, the Congress amended the Social Security Act, effective November 1, 1956, to provide, as we have noted *supra*, that a wife could obtain her OASI benefits at age 62 rather than at the age of 65; thereafter the state board adopted regulation A-212.53. After respondent's wife passed her 62d birthday and refused to elect to receive her OASI benefits, the board recomputed respondent's aid. All of these events transpired after the judgment; the questioned action of the board occurred subsequent to the statutory changes; the county thereafter recomputed respondent's benefits.

These events created a new factual and legal situation that materially changed the rights of the parties. The previous judgment did not foreclose the board from applying the new board standard. Neither did the prior judgment cast the rights of the parties as to the current issue; the matrix has been changed. A judgment carries no res judicata effect "where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants." (*Hurd* v. *Albert* (1931), 214 Cal. 15, 26 [3 P.2d 545. 76 A.L.R. 1348]; *California Emp. etc. Com.* v. *Matcovich* (1946), 74 Cal.App.2d 398, 404 [168 P.2d 702];

*Hasselbach* v. *Department of Alcoholic Beverage Control* (1959), 167 Cal.App.2d 662, 665 [334 P.2d 1058].) Since the instant action arose after the amendment to the federal statute, supplemented by new state and federal regulations, and at a time when respondent's wife enjoyed eligibility for her OASI benefits, the original judgment cannot bind the parties.

While respondent's attorney requested at oral argument that attorney's fees be allowed him pursuant to section 104.3 of the Welfare and Institutions Code, even though judgment below were to be reversed, we do not believe the section authorizes attorney's fees in such circumstances.

We conclude that a provision of a state social security system requiring exhaustion of potential resources as a condition to aid, conforming, as it must, to federal requirements, neither exceeds legislative authorization nor violates constitutional precept. Nor is a dynamic social policy, such as this, arrested by a court decision to the extent that regulations, different from those adjudicated, cannot declare different rights and obligations.

We reverse the judgment.

Bray, P. J., and Duniway, J., concurred.